7b 191
154a 281

## CROSWELL and VAN BUREN *vs.* CRANE,

A lease of lands by parol for a term of one year, to commence *in futuro*, is within the prohibition of the revised statutes respecting fraudulent conveyances and contracts relative to lands, (2 *R. S.* 134, § 6,) and is therefore void.

Such a lease is also void, under the statute of frauds, as being a contract which, by its terms, is not to be performed within one year from the making thereof.

The second section of the title of the revised statutes relative to fraudulent con-veyances and contracts respecting goods and chattels (2 *R. S.* 135) includes also agreements in respect to real estate, which, but for it, would have been valid.

In the revision of statutes, an alteration in the phraseology, or the omission or addition of words, does not necessarily alter the construction of the act, or im-ply an intention on the part of the legislature to alter the law.

In the revision of the laws, a reform of the language is not necessarily an alter-ation of the law.

Croswell *v.* Crane.

The intent of the legislature to alter the law must be evident, or the language of the new act must be such as palpably to require a different construction, before the courts will hold the law changed upon such revision, merely from the fact of a change of the language employed.

A lease, although for a term commencing *in futuro*, passes a present interest in the term, to the lessee.

The making, signing and tendering a lease to a tenant, by the lessor, is not a leasing or writing, within the statute of frauds, if the lease does not follow the parol contract between the parties, and the lessee refuses to accept the same.

A landlord can only recover, in an action for use and occupation, for the time the tenant has *actually occupied* the premises, either by himself or by his sub-tenant or agent.

When the tenant has not entered into possession at all, *under the lease or agreement*, either in person or by an under tenant or agent, no recovery can be had.

An action for use and occupation is founded on contract, express or implied, and lies only when the relation of landlord and tenant exists.

If the circumstances of the case are inconsistent with the existence of a contract, and necessarily rebut every implication of a promise to pay rent, that form of action will not lie.

THIS action was brought to recover the rent of certain premises in the city of Oswego; the plaintiffs counting specially upon a demise alledged to have been made in January, 1845, for a term of one year, to commence the first of May thereafter, at the yearly rent of $450, payable quarterly, and also for the use and occupation of the same premises. The cause was tried before a referee. On the trial the plaintiffs proved that the defendant had occupied the premises, as their tenant, for the year ending May 1, 1845, and had underlet a portion of the premises to Carrington & Pardee. The plaintiffs also proved that their agent, in January, 1845, offered the premises to the defendant for another year, at the rent of $450; that the defendant said it was high rent, but that he had made no other arrangement, and must have the premises at any rate; that he would take the premises, or must have them. The defendant said, at the same time, that he must be permitted to make some repairs; to which the agent replied, "of course, some repairs will be necessary." The defendant said he wanted a memorandum in writing, and the agent promised to prepare it and have it executed. And in February the agent prepared a lease corresponding with that counted upon, and executed the same in behalf of the plain-

Croswell *v.* Crane.

tiffs, and handed it to the defendant, with a corresponding agree-ment to be executed by the defendant as tenant. The defend-ant did not retain the papers, but returned them to the agent, saying he would do what he said; that it was a bargain, and he would stick to it, but that he was going to Albany and would see Croswell and get him to take off part of the rent, which was too high. There was evidence that the premises were greatly out of repair, and required a considerable expenditure to put them in proper condition for occupation. Before the first of May the defendant gave notice that he should not occupy the premises after that time, and upon the expiration of his term, on the 30th of April, he returned the keys to the plaintiffs' agent. It was doubtful, upon the evidence, whether Carrington & Par-dee continued to occupy a portion of the premises after the first of May, 1845, and before October of that year. In October there was an arrangement between the parties, by which the plaintiffs were permitted to rent the premises without prejudice to their claim against the defendant, except as to the amount they might actually receive for their use and occupation; and under that arrangement the premises were let by the plaintiffs, who, in an account rendered of their receipts and expenditures, credited $75 as received of " Carrington & Pardee, rent of south basement for the year." The referee reported in favor of the defendant, and the plaintiffs moved for a new trial, upon a case.

*L. Babcock*, for the plaintiffs.

*D. H. Marsh*, for the defendant.

*By the Court*, ALLEN, J. It is at least doubtful, upon the evidence, whether there was a concluded agreement between the parties for the renting of the premises from the first of May, 1845; and had the referee reported against the plaintiffs, upon the ground that no such agreement was proved, I do not think the report could have been disturbed. The evidence of the plaintiffs' agent shows that at the time when it is claimed that

Croswell *v.* Crane.

a final agreement was made, there were matters left, thereafter to be settled by agreement, viz. the character and amount of the repairs to be made upon the demised premises, and at what time to be done, and in what manner allowance should be made to the defendant therefor.  This matter required further negotiation, and such negotiation was contemplated by the parties ; and so long as the agreement rested in treaty, while negotiation was still open, and the terms unsettled, it was optional with either party to withdraw from it.  Again ; the parties provided for a written lease, and the terms of that lease were to be settled and agreed upon, and when executed it was to constitute the agreement.  But the referee based his report upon the legal questions made by the parties, and in his decisions followed substantially the opinion of this court given upon a former motion in this cause ; although the questions are presented in a different form.

It is insisted in behalf of the plaintiffs, 1st. That the lease of the premises by parol, being but for the term of one year, although to commence *in futuro*, is not within the prohibition of section six of title one of chapter seven of part two of the revised statutes. (2 *R. S.* 134.)  Before the revised statutes, leases for terms not exceeding " three years *from the making thereof*," reserving rents of a certain value, were authorized to be made without writing.  (2 *R. L.* 78, § 9.)  This act was a transcript, substantially, of the act of 29 *Car.* 2, *ch.* 2, under which it was settled that leases by parol, to commence *in futuro*, for terms which would expire within three years from the making thereof, were valid ; but that like leases for three years or less, which would not terminate within three years from the making of the agreement, were invalid.  (12 *Mod. Rep.* 610. 1 *Stra.* 651.  2 *Ld. Ray.* 736.  *Bac. Abr. tit. Agreement C.*)

The legislature, in the revision of the laws, have in some respects, changed the terms of the act as well as altered the phraseology ; and the alteration of the phraseology gives rise to the question now presented.  The former act authorized leases by parol for terms not exceeding three years.  The present act authorizes them only for one year.  The former act made the res-

Croswell *v.* Crane.

ervation of certain rents upon parol leases necessary to their validity. The act in force at this time dispenses wth that requirement ; leaving it to the parties to regulate the amount of rent. The change in the phraseology alluded to, consists in the omission of the words, " from the making thereof," contained in the former act, after the designation of the terms for which parol leases may lawfully be made. The language of the revised statutes, so far as it is necessary to quote it, is as follows : "No estate or interest in lands, *other than leases for a term not exceeding one year*, nor any trust, &c. shall be created, &c. unless by act, &c." That of the revised laws, was to the effect that all leases, &c. not in writing, should have the force and effect of leases at will only, " except nevertheless, all leases not exceeding the *term of three years from the making thereof*, whereupon the rent reserved," &c.

It is well settled that in the revision of statutes an alteration in the phraseology, or the omission or addition of words, does not necessarily alter the construction of the act, or imply an intention on the part of the legislature to alter the law. In a revision of the laws a reform of the language is not necessarily an alteration of the law.

The intent of the legislature to alter the law must be evident, or the language of the new act must be such as palpably to require a different construction, before the courts will hold the law changed, upon such revision, merely from the fact of a change of the language employed. (*Gaffney* v. *Colvill,* 6 *Hill,* 574. *Theriat* v. *Hart,* 2 *Id.* 280. *In the matter of Brown,* 21 *Wend.* 316, 319, *per. Kent, Ch. J. In the matter of Yates,* 4 *John.* 359. *Taylor* v. *Delancy,* 2 *Caines' Cas. in Err.* 143, 151.) In the cases last cited, Spencer, J. whose opinion was adopted by the court for the correction of errors, says, " These acts are of the description of revised laws, and if susceptible of doubt in their interpretation resort must be had to the law existing antecedently." And again, " My opinion is founded on this proposition, that when the law antecedently to the revision was settled either by *clear expressions in the statutes,* or adjudications on them, the mere change of phraseology shall not be deemed or con-

Croswell *v.* Crane.

strued a change of the law, unless such phraseology evidently purports an intention in the legislature to work a change." In that case, the question was whether the surrogate had a discretionary power, in the granting of administration, to elect between kin of equal degree. The statute of 21 Hen. 8, ch. 5, of which the act of 14th February, 1787, was held to be a revision, granted such discretion to the ordinary, in express terms, which terms were omitted in the act of 1787. And Spencer, J. says, "The revisers of the laws in 1787 well knew, that this statute (21 *Hen.* 8) vested a discretion, and still we find no term made use of negating that discretion or purporting to change the law." And the court held that the law was not altered by this omisson, but that the discretion before vested in the ordinary was then vested in the surrogate. Again; the act of 1813 (1 *R. L.* 437, § 12) restricted the claim of a landlord upon goods seized upon execution, to the rent due "*at the time of the taking*" of the goods on the execution. The revised statutes (1 *R. S.* 746 § 12) do not contain the restriction contained in the clause quoted; but the court held that the omission of these words did not work a change in the law. (*Theriat* v. *Hart, supra.*)

There is nothing in the phraseology of the revised statutes to authorize the inference that the legislature intended to change the law which existed antecedently, in respect to the time from which the term for which parol leases might be granted, should be computed. Indeed, were the question a new one, arising upon the statute as it now reads, without the aid of any previous legislative enactments, or judicial constructions, the most reasonable construction which could be given to the provision, would be to limit the exception to leases for terms not exceeding one year from the making thereof. 1. The lease, although for a term commencing in *futuro*, passes a present interest in the term, to the lessee. (1 *Hill*, 484.) And it would be reasonable, therefore, to infer that the legislature, in fixing the term for which a lease by parol should be valid, in the absence of any provision to the contrary, intended that the time of the commencement of the interest of the lessee in the term should be the time from which the continuance of that interest should

be computed and limited. 2. Upon any other construction, a lease by parol for a year and a day, commencing from the time it is made, would be void by the statute, while successive leases, for a year each, might be given by parol, to the same or different lessees, each term to commence on the expiration of a precedent term, for any number of years; an inconsistency in legislative action not to be presumed, except upon the plainest expression in the statute. There is certainly nothing in the revised statutes which limits the time at which a lease for a year shall commence, if it may commence at any time after the making thereof, or to prohibit the giving of two or more leases for a year each, and the respective terms to commence at such times *in futuro* as not to interfere with each other. 3. The construction of the present act, in conformity with the former legislative provisions, and the adjudications under them, will best promote the design and intent of the statute for the prevention of frauds and perjuries, and make the action of the legislature consistent with the history of past legislation upon the same subject. The legislature, as well as the revisers, knew the period fixed by the antecedent law, and if they had intended to fix a different period for the commencement of the term for which a parol lease might be given, they would have said so expressly, and would not have left it in doubt and uncertainty, both as to their intent to make any change in this respect, and also in regard to the time at which the term should commence.

By reference to the notes of the revisers, and the acts of the legislature upon the section under consideration, there can be but little doubt as to the intent of each upon this subject. The section was adopted by the legislature as reported by the revisers, except that the legislature substituted the words "leases for a term not exceeding one year," in lieu of "leases not exceeding three years," as reported. The revisers in their original note, (3 *R. S.* 655, 2*d ed.*) state that the only alteration they proposed was in the omission of the clause limiting the rent of such leases; and they evidently contemplated no other alteration of the provisions of the then existing law. They retained the term of three

Croswell *v.* Crane.

years provided by the former acts, and which was only altered by the legislature by the substitution of "one year" for "three years." Had it been intended to suffer such leases to be made for the full term mentioned in the act, and to commence *in futuro*, instead of "at the time of the making thereof," some notice would have been taken of the change. Or had the revisers reported the section in the phraseology of the former act, and the legislature had, when they changed the period for which such leases might be given, from three years to one year, struck out the words "from the making thereof," there would have been reason to suppose that an alteration of the law, in that respect, was intended. The revisers say in their notes to this chapter, "In preparing these provisions, one great object has been to restore (in conformity to the general course of our own courts) the salutary principles of the original statutes, with such modifications and improvements as have been suggested by experience, or as seem to be demanded by our state of society." (3 *R. S.* 654, 2d ed.)

If we are right in the view which we have taken of the statute, then the lease in question was for a longer period than one year from the making thereof, and therefore void, and the action can not be maintained upon the special counts.

We are aware that in the second edition of Cowen's treatise (1 *Cowen's Tr.* 2d ed. 270) it is said in reference to this section of the statute, "this change in the phraseology of the statute would certainly seem to indicate an intention in the legislature to authorize the making of parol leases, 'for a term not exceeding one year,' to commence in futuro." But it is also said that the effect of this alteration, in the language of the statute, remains open to judicial construction. While we respect, and would defer to the opinion of the learned jurist who is supposed to speak in the work quoted, when fully expressed, we can not yield to the opinion thus intimated. It is highly probable that the statute, and the history of the change in its language, were not examined with the care and attention which they would have received in a judicial investigation by the same eminent judge. We were also cited by the plaintiffs' counsel to the

opinion of Ch. J. Bronson, in *Wilson* v. *Martin*, (1 *Denio*, 605,) in which he says "But there is no leasing of lands, or any interest in lands, in the case"; from which expression we are asked to infer that the court would have held the agreement in that case valid, as a lease by parol for one year, to commence *in futuro*. This is not a necessary inference. Had the agreement in that case been a leasing of real estate, and the defendant had entered into possession under the lease, as he had occupied the lodgings, then, although the agreement would have been void as a lease, yet the defendant would have become a tenant of the plaintiffs from year to year. The agreement would have regulated the amount of the rent, and the period at which the tenancy expired, and the rights of the parties would have been entirely different than under a contract for board and lodging. (*Schuyler* v. *Leggett*, 2 *Cowen's Rep.* 660. *Rowan* v. *Lytle*, 11 *Wend.* 614. *Jackson* v. *Salmon*, 4 *Id.* 327.)

2dly. The referee held that the lease was void, for the reason that it was a contract that, by its terms, was not to be performed within one year from the making thereof. (2 *R. S.* 135, § 2.) If our conclusion upon the other question is correct, it is not necessary to decide this point; and the referee having held the lease void upon the other ground, was not called upon to pass upon this question. But I am inclined to think that the contract is within the prohibition of the act last quoted. Where the statute authorized the leasing of lands by parol for a term not exceeding three years from the time of making the lease, this provision did not apply to contracts of that character; upon the principle that in construing a statute, effect is to be given to every part of it, if possible. And hence leases of that character, although within the words of the act making void contracts by parol which were not to be performed within one year, were virtually excepted from its operation. But that reason no longer operates; and the reason ceasing, the rule itself must cease. The words in the statute being express, plain and clear, they are to be understood according to their genuine and natural signification and import. (*Bac. Abr. Statute H.* 2; *Rockfort* v. *Fitzmaurice*, 2 *D. & W.* 19; *Jones* v. *Jones*, 6 *Shep.* 308; *Smith* v.

*Bell*, 10 *Mees. & Wel.* 378; *The Sussex Peerage*, 11 *Cl. & Fin.* 86; 4 *East*, 438.) The words of the act are very general, and include "*every agreement* that by its terms is not to be performed within one year from *the making thereof.*" This clause, taken in connection with the 6th section of the first title of the same chapter, adds force to the construction which we have given to that section. For it is reasonable to presume that the legislature intended to make the provisions of the statute uniform, and compute the year within which parol agreements were to be performed from the time of the making the agreement; whether the agreements had reference to the occupation of real estate, or any other matter which might be the subject of an agreement. We think the section now referred to includes agreements in respect to real estate which, but for it, would have been valid, as well as agreements in relation to goods, chattels and things in action. (*Pitkin* v. *Long Island R. R. Co.*, 2 *Barb. Ch. Rep.* 232, *per Chancellor. Broadwell* v. *Getman*, 2 *Denio*, 87.) This contract was not, by its terms, to be performed within the year, and was therefore void. (*Broadwell* v. *Getman. Wilson* v. *Martin, ubi supra. Lockwood* v. *Barnes*, 3 *Hill*, 128.)

3dly. It is insisted that the making, signing and tendering a lease to the defendant, by the agent of the plaintiffs, was a leasing or writing within the statute of frauds, and that the plaintiffs were entitled to recover, upon the evidence of such leasing. To this there are several answers. 1st. The lease did not follow the contract by parol. (1.) It provided for payment of rent quarterly, which was unauthorized. (2.) It did not provide for any repairs; a matter which was expressly provided for in the parol agreement, if any such agreement was ever concluded, and which was essentially necessary to make the premises tenantable. But 2dly. The defendant never accepted the lease. The plaintiffs' agent did not even tender it in execution of the parol agreement, but merely offered it, and withdrew it, and retained it upon the suggestion of the defendant that he would see Croswell. But if he had formally tendered it and left it with the defendant, that would not have rendered valid a prior

void agreement, unless the defendant had accepted it as a lease. If the agreement was void the plaintiffs could not validate it by signing the writing required by the statute. It was optional with both parties whether they would make a valid agreement, and the defendant could only become bound by accepting a valid lease, which he never did. To make a valid leasing there should have been a unity of the minds of the parties at the time the written lease was offered. (*Chit. on Cont. 7th Am. from 3d Lond. ed. pages* 9, 10, *and cases cited in notes.*)

The next question that arises in the case is whether the plaintiffs can maintain an action for use and occupation. It is not pretended that the defendant in person occupied any part of the premises; but it is contended that he had rented a part of the premises for the previous year to Carrington & Pardee, who had not yielded possession of the part occupied by them, but had continued to occupy that part through the year 1845; and that the defendant can not be held to have surrendered the possession of any part of the premises until the whole were vacated; and that Carrington & Pardee having entered as the tenants of the defendant, he was bound to compel them to vacate the premises. The defendant insists that the evidence does not show that Carrington & Pardee remained in possession after the first of May, 1845, except by consent of the plaintiffs under the stipulation of October 18th.

The evidence is not very clear as to the occupation by Carrington & Pardee after May 1, 1845. There is no evidence, however, that after the 1st of May, 1845 they occupied by the assent of the defendant, or that they were in any respect his tenants after that time. It is provided by statute, (1 *R. S.* 748, § 26,) that "any landlord may recover, in an action on the case, a reasonable satisfaction for the use and occupation of any lands or tenements by any person under any agreement not made by deed." This statute has received a construction in the cases of *Wood* v. *Wilcox*, (1 *Denio*, 37,) and *Beach* v. *Gray*, (2 *Id.* 84.) And under the act the landlord can only recover, in an action for use and occupation, for the time the tenant has *actually occupied* the premises either by himself or his sub-ten-

Croswell *v.* Crane.

ant or agent. And where the tenant has not entered into possession at all, *under the lease or agreement*, either in person or by an under tenant or agent, no recovery can be had.

In this case, if it be conceded that Carrington & Pardee continued in the possession of a part of the premises in question, as the under tenants of the defendant, then the recovery should be graduated by the extent and time of such occupation. The premises were calculated and intended for subdivision and several occupancy by different tenants. As actual occupation by the defendant or his under tenant or agent is the necessary foundation of this action, the plaintiffs in this case could in any event only have recovered for that portion of the premises actually occupied by Carrington & Pardee, and for the time they so occupied. And it appears by Schedule D. that the plaintiffs received of Carrington & Pardee the value of their occupation for the whole year. But there is no evidence in the case that Carrington & Pardee were the under tenants of the defendant, or continued in the possession of the premises after the 1st of May, 1845 by his assent or permission; and this fact must have been found in favor of the plaintiffs before they would have been entitled to recover for use and occupation. (*Tancred* v. *Christy*, 12 *Mees. & Welsby*, 316.) It is true that the defendant was bound, on the expiration of his prior term, on the 1st of May, to surrender the possession of the premises to the plaintiffs. But that liability grew out of his contract for the rent of the premises for the previous year; and for a breach of that contract the plaintiffs had their remedy by action upon it. It by no means follows that from a violation of that contract the referee could infer that the defendant had made an entirely different contract, against his express protest that he had not made and would not make such different contract. In *Waring* v. *King*, (8 *Mees. & Wels.* 571,) the defendants had rented the premises for nine months, with the privilege, at the end of that time, of taking a lease for 7, 14, or 21 years, and before the expiration of the nine months sublet the premises for six months, which did not expire until after the expiration of the nine months, and the sub-tenants

Croswell *v.* Crane.

occupied the premises until the expiration of their term. The court held that the defendant having actually let the premises for a term which did not expire within the nine months, was evidence from which a jury might infer an election to take a further lease of the premises in pursuance of the agreement, and an occupation in pursuance of such election. In other words, that the relation of landlord and tenant between the parties continued to exist by the election of the defendant. No stress is laid upon the occupation, aside from the assent of the defendant. An action for use and occupation is founded on contract express or implied, and lies only when the relation of landlord and tenant exists. (*Bac. Abr. Rent, K. 7. Henwood* v. *Cheeseman,* 3 *Serg. & Rawle,* 500. *Osgood* v. *Dewey,* 13 *John.* 240. *Codman* v. *Jenkins,* 14 *Mass.* 93.) If the circumstances of the case are inconsistent with the existence of a contract, and necessarily, upon any fair construction, rebut every implication of a promise to pay rent, this form of action will not lie. (*Burton* v. *Binney,* 11 *Pick.* 1. *Tew* v. *Jones,* 13 *Mees. & Welsb.* 12. *Featherstonhaugh* ads. *Bradshaw,* 1 *Wend.* 134.) The facts proved in this case are entirely inconsistent with the idea that the relation of landlord and tenant existed between the parties after the first of May, 1845. The defendant had long before then given notice that he should not occupy the premises as the tenant of the plaintiffs, and repudiated the agreement which it is claimed he had made for their occupation another year. And at the expiration of the then current year he surrendered the keys of the part then occupied by him, and renewed the notice; and as before remarked, there is no evidence that from that time he assented to the occupation of any part of the premises by Carrington & Pardee, or that they occupied otherwise than as trespassers as well against the defendant as the plaintiffs. The defendant, so far as the evidence goes, did not have, or exercise, or claim to have or exercise, any control over the premises; nor did his acts or omissions influence or affect the occupation of any part of the premises after the surrender of the keys by him.

We can not, in view of these circumstances in direct contra-

diction of his express declaration that he would not occupy the premises or pay for their occupation, imply that he did occupy them and promise to pay a reasonable compensation therefor.

The motion to set aside the report of the referee is denied.

ALBANY SPECIAL TERM, October, 1849.   *Hand,* Justice.