*Mr. Charles J. Thompson,* for plaintiffs.

*Mr. L. S. Dixon,* for defendants.

------

## IRELAND *v.* COMMISSIONERS ARAPAHOE COUNTY.

(*Supreme Court of Colorado, December 5, 1882. Error to the Arapahoe District Court.*)

1. CONSTRUCTION OF STATUTE.—FEES OF JURORS. A statute which, in providing compensation to be paid jurors, reads: "In District and County Courts, per day, two dollars and fifty cents; attending inquest over dead body, to be paid out of the county treasury, two dollars and fifty cents; attending before justices of the peace, two dollars," fixes the compensation to all such jurors *by the day.* Rules of construction.

BECK, J. The record in this case informs us that on the 31st day of October, 1880, Sing Lee, a Chinaman, was killed in a riot in the city of Denver, and that the plaintiff in error and five other citizens were summoned by the coroner of Arapahoe County, as jurors, to hold an inquest over the dead body.

That said jurors held twelve sessions, and presented a bill to the county commissioners for twelve days' service each, at the rate of $2.50 per day. That said commissioners allowed the several jurors the sum of $2.50 each, and disallowed the balance of the bill, on advice of the county attorney that the statute allowed this sum only to each juror for the inquest, irrespective of the number of days occupied in holding the same.

From this decision the plaintiff appealed to the District Court, where the decision of the commissioners was sustained. The plaintiff thereupon sued out a writ of error, and has brought the case before us for review, the error relied upon being the construction given the statute by the Court below, which was that it does not allow a *per diem* compensation, but the sum of $2.50 to each juror for the inquest.

The statute under which the controversy arises, is Sec. 5 of an act approved March 24, 1877, entitled "An act to fix and regulate the fees chargable by county, precinct and other officers."

Three classes of jurors are named in this section in one and the same sentence, and their fees prescribed thus: "In District and County Courts, per day, two dollars and fifty cents; attending inquest over dead body, to be paid out of the county treasury, two dollars and fifty cents; attending before justices of the peace, two dollars."

The learned counsel on both sides of the case agree upon one proposition concerning the interpretation of this statute, and only one, which is, that its meaning is plain and obvious. From this common premise, they proceed, with much earnestness, to demonstrate, on the one hand the error, on the other the correctness of the former adjudication.

We think the framers of the act might have expressed their meaning more clearly than they have done in this section, and shall therefore regard it as affording room for construction.

The widely diverging views of opposing counsel respecting its meaning would justify this course.

We shall therefore proceed to the consideration of the question submitted, and endeavor, by the aid of established rules of construction applicable to such cases, to ascertain the legislative intent respecting the manner of compensating this class of jurors.

Referring first to the structure and arrangement of the section, it is found to contain several clauses, all constituting, as before stated, but one sentence. The doubts about the meaning of this sentence arise from the fact that the words "*per day*" are expressed in the clause prescribing fees for jurors in the District and County Courts, and omitted from the two following clauses which name the fees allowed to jurors at inquests and in justices' courts.

It is not an unusual mode of expression, when the intention of the writer is to apply the same qualifying words in connection with an antecedent proposition to the several clauses of a sentence, to express such words in the first clause only, leaving the reader to supply them in the remaining clauses.

The structure of the sentence and its natural signification, regard being had to the order and grammatical arrangement of the words employed, furnish the guide to its meaning. Such sentences are usually understood according to the intention of the writers.

If the sentence under consideration be read in the light of such usage, the first and natural inference would be, that all jurors were to be paid *by the day*, during their employment as such. The words *"per day,"* in connection with the phrase *"jurors' fees shall be,"* would be supplied, by implication, to the clauses relating to the service at inquests, and in justices' courts. This, in our judgment, would be the ordinary and natural import of the sentence.

Unless, therefore, we shall discover evidence that such was not the legislative intent, this must be held to be its legal interpretation. "What is implied in a statute, is as much a part of it as what is expressed." "A thing within the intention of the makers, is as much within the statute as if it were within the letter." *United States* v. *Babbit*, 1 Black., 61.

If, however, the qualifying words *"per day"* had been expressed as to both the first and second classes of jurors, and omitted as to the third class, there would be great force in the position that the intention of the law-makers was to allow the latter class a gross sum for the service, regardless of the number of days employed.

Such was the form of the earlier statutes, but they appear to have been consistent in themselves as to each branch of service. If the jurors attending coroners' inquests were not allowed a *per diem*, neither the coroner nor others officiating thereat were allowed a *per diem*.

We will now examine the prior statutes relating to the fees of jurors and coroners, for the purpose of gaining additional clues to the legislative intent in the present law.

It is a rule that in construing a doubtful statute, and for the purpose of arriving at the legislative intent, all acts on the same subject matter, including repealed statutes, are to be examined and construed together as one system in order to arrive at the true result. Sedg. on Stat. Con., p. 209.

We find the following enactments on the subject:

*First*—Act approved November 8, 1861:

"Jurors' fees, in District and County Courts, per day, two dollars. Mileage for each mile travelled, fifteen cents. Before justices of the peace, per day, one dollar and a half. Attending inquest over dead body, when summoned by the coroner, to be

paid out of the county treasury, one dollar." Laws 1861, p. 390.

"Coroners shall be allowed eight dollars for each inquest, and fifteen cents per mile for each mile necessarily travelled," etc. Laws 1861, p. 394.

*Second*—Act approved April 10, 1865:

"Sec. 6. Jurors' fees, in District Courts, per day, two dollars and fifty cents. Before justices of the peace, per day, two dollars; attending inquest over dead body, to be paid out of the county treasury, two dollars each; mileage for each mile travelled, twenty cents per mile." Laws 1865, p. 64.

*Third*—Act to amend above section, approved Feb. 2, 1866:

"Sec. 1. That section six (6) of said act shall be amended to read as follows: Jurors' fees, in District Courts, per day, two dollars and fifty cents ($2.50); attending inquest over dead body, to be paid out of the county treasury, two dollars and fifty cents ($2.50) each; mileage," etc. Laws 1866, p. 55.

*Fourth*—Revised Statutes of 1868:

"Sec. 9. Jurors' fees, in District Courts, per day, two dollars and fifty cents; before justices of the peace, per day, two dollars; attending inquest over dead body, to be paid out of the county treasury, two dollars and fifty cents; mileage," etc. Laws 1868, p. 320.

"Sec. 18. Coroners shall be allowed eight dollars for each inquest, and fifteen cents per mile for each mile necessarily travelled," etc. Laws 1868, p. 324.

*Fifth*—An act relating to fees and salaries in Arapahoe County, approved Feb. 13, 1874:

"Sec. 7. Jurors' fees, in District Courts, per day, two dollars and fifty cents ($2.50). Before justices of the peace, per day, two dollars and fifty cents ($2.50). Attending inquest over dead body, to be paid out of the county treasury, two dollars and fifty cents ($2.50). Mileage," etc.

"Sec. 15. Coroners shall be allowed eight (8) dollars for each inquest," etc. Laws 1874, p. 159.

*Sixth*—Act amendatory of last above act, approved Feb. 11, 1876:

"Sec. 4. That section seven (7) of said act is hereby amended so as to read as follows: Jurors' fees, in District Courts and Probate Courts, per day, two dollars and fifty cents ($2.50);

before justices of the peace, one dollar ($1.00) per day; attending inquest over dead body, to be paid out of the county treasury, two dollars and fifty cents ($2.50); mileage," etc.    Laws 1876, p. 74.

We will now quote the sections of the present law which relate to the fees of jurors and coroners:

Act approved March 24, 1877:

"SEC. 8.    Jurors' fees shall be as follows:  In District and County Courts, per day, two dollars and fifty cents; attending inquest over dead body, to be paid out of the county treasury, two dollars and fifty cents; attending before justices of the peace, two dollars; mileage for each mile necessarily travelled, fifteen (15) cents."    General Laws 1877, p. 428.

"SEC. 19.    Coroners shall be allowed five (5) dollars per day for each day actually employed in making an inquest, and fifteen (15) cents per mile for each mile actually travelled in going to and returning from the place of inquest, to be paid by the county.    For all services performed in place of the sheriff, the same fees as are allowed to the sheriff for his services."    General Laws 1877, p. 440.

It will be observed that both the phraseology and language of the prior acts differ from the present law in respect to the fees of coroners and their jurors.    Under the former acts, the coroner was allowed a gross sum for holding the inquest.    All jurors, except those serving at inquests over dead bodies, were allowed a *per diem*, the words "*per day*" being expressed in connection with the amount of fees allowed to each of the other classes, but omitted as to the latter class.    These circumstances indicate that the former statutes did not contemplate a *per diem* to either coroners or jurors serving at coroners' inquests.

Let us now compare the present law with the former laws, and see if there is not evidence of a change of policy or rule on this subject.

Under the former laws, coroners were allowed the sum of eight dollars for each inquest; now they are allowed five dollars for each day devoted to the inquest.

Provision is also made in the present law for paying all witnesses by the day for each day they may be required to attend a coroner's inquest. G. L. 1877, p. 240, Sec. 86; and Sec. 6, *Ibid*, p. 428; both acts approved March 24, 1877.

We have already expressed the opinion that the natural im-

port of the present statute is, that jurors attending inquests shall be compensated in the same manner as other jurors; that is, by a *per diem* while serving as such.

We now go further, and say, that, in our judgment, the structure of the section under consideration, and the classification of the jurors therein, is such, that unless the section be construed to allow a *per diem* to coroner's jurors, it cannot be construed to allow a *per diem* to jurors in justices' courts.

We see no way of escape from the proposition that the same rule of construction must be applied to both of the last mentioned classes. This consideration would seem to be decisive of the controversy, for the law has allowed jurors in justices' courts a *per diem* ever since the organization of the Territory. The several prior statutes above quoted, commencing with that enacted by the first Legislative Assembly, are explicit upon this point. The change noted in the phraseology and language of the present act does not imply an intention to change the law as to these jurors. In order to have this effect, the rule is, that the intent must be evident or the change of language palpable. Sedg., p. 229; Dwarris, p. 181; *Croswell* v. *Crane*, 7 Barb., 191; *Hall* v. *West. Trans. Co.*, 34 N. Y., 289 290.

Referring to the change of phraseology and language as applied to jurors for coroners' inquests, the case is wholly different. In respect to this class of jurors, the change of phraseology and language implies an intention to alter the law, and to place them on an equality with other jurors; and this construction is aided by other portions of the same statute, and by acts in *pari materia*.

The interpretation contended for on the part of defendant in error would render the statute inconsistent in itself, in awarding full compensation for like services to all but a single class of servants, and would also, as we have seen, lead to absurd consequences of construction; whereas the other construction leads to consistency and harmony.

Mr. Dwarris says:

"It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions." Dwarris on Stats., p. 189.

A review of the whole subject and the whole legislation on the subject conducts us to the conclusion, that the latest expression of the legislative will is to compensate all persons required by law to attend coroners' inquests for the full term necessarily devoted to that service, as in other cases of like nature.

The cause is reversed and remanded for further proceedings, in conformity with this opinion.

*Reversed.*

*W. A. Hardenbrook,* for plaintiff in error.
*W. B. Mills,* for defendant in error.