[No. 6247.]

JAMES McCOY v. DAVID BRIANT, J. M. BOYD, M. KEATING, W. A. BEGOLE, AND J. G. ESTU-DILLO, TRUSTEES OF SAN DIEGO, AND DAVID FAL-SENHELD, W. W. BOWERS, AND WM. SCHOLLE.

POWER OF MUNICIPAL CORPORATION.—A municipal corporation can only act in the cases and in the *mode* prescribed by its charter.

MUNICIPAL CONTRACTS.—All persons contracting with a municipal corporation must, at their peril, inquire into the power of the corporation or its officers to make the contract, and a contract beyond the scope of the corporate power is void, although it be under the seal of the corporation.

ILLEGAL EXERCISE OF CORPORATE POWER. — Where the Legislature author-
ized a municipal corporation to issue bonds "at such time or times as the
Board of Trustees may by *resolution* direct," and bonds of the city were
issued under the corporate seal, but without the passage of a resolution
authorizing the issue: *held*, that the bonds were void.

ILLEGAL BONDS—ENJOINING THEIR CIRCULATION.—Bonds of a municipal cor-
poration that are void in the hands of an innocent holder are not a charge
against the public, and their circulation cannot be enjoined at the suit of a
tax payer.

APPEAL from the District Court of the Eighteenth Judicial
District, San Diego County.

The plaintiff, as a tax payer, brought this action to enjoin the
defendants, as Trustees of the City of San Diego, and as the
holders of certain bonds, from circulating such bonds, on the
ground that they were unlawfully issued.

In 1873, a "Citizens' Committee of Forty," of the City of
San Diego, acting on behalf of the citizens, made a contract
with Col. Thomas A. Scott, agreeing that in consideration of
the construction of the Texas and Pacific Railway within the
time fixed by its charter the City of San Diego should procure
the right of way through the county for the road, depot, grants
for the same, together with the franchise and property interests
of the San Diego and Southern Pacific and Atlantic Railroad
Company. This contract was subsequently ratified by a vote
of the citizens. To enable the city to carry out the agreement,
Charter Ordinances No. 7 and 8 were passed, as stated in the
opinion. The Legislature subsequently passed an act, (approved
February 24th, 1874—see Statutes 1873–4, p. 156) "To legalize
certain bonds of the City of San Diego, and to provide for the
payment of the interest thereon and for the redemption thereof,"
limiting the sum to one hundred and fifty thousand dollars. In
October, 1875, a petition signed by A. E. Horton and other cit-
izens was filed with the Board of Trustees, representing that
certain unfriendly legislation was contemplated by Congress,
and recommending that, in order to defeat such adverse legisla-
tion and to protect the interests of the city, the defendant,
Falsenheld, be sent as an agent to Washington, "to represent
the interests of the city in this railroad matter; and for his ser-
vices and expenses that you appropriate and deliver to him the

sum of four thousand dollars in City Railroad Bonds." The bonds in controversy were issued in compliance with this petition, and without passing any resolution for the purpose.

Judgment was rendered in favor of the plaintiff, and the defendants appealed.

*H. E. Highton, W. Jeff. Gates,* and *A. B. Hotchkiss,* for Appellant.

*Chase & Leach,* for Respondent.

By the COURT:

If the bonds in controversy would have been void in the hands of an innocent holder for value, and would not have constituted a valid charge against the City of San Diego, "it must follow, as a consequence, that by no legal possibility can the plaintiff or the other tax payers" of the city be injured by the supposed illegal acts of the defendants. (*Linden* v. *Case,* 46 Cal. 174.)

The first question, therefore, to be determined, is whether the bonds would have been void in the hands of a *bona fide* holder for value. The authority to issue the bonds is derived exclusively from ordinances numbered seven and twenty-two of the trustees of the city, which were subsequently ratified and validated by the Act of the Legislature of February 24th, 1874. (Statutes 1873–4, p. 155.)

Ordinance No. 7 provides that the bonds are "to be issued at such times and in such manner as said Board of Trustees may direct"; and Ordinance No. 22 in the fourth section provides that the bonds are to be issued "to such person or persons, and at such time or times, as said Board of Trustees may, *by resolution,* direct"; and the fifth section, after providing for the signing of the bonds, etc., then provides that the "Clerk shall then deliver said bonds, thus signed and sealed, to such person or persons, and at such time or times, as said Board may, *by resolution,* direct." The bonds in controversy were issued and delivered to Bowers, and were payable to him, "or the lawful holder thereof"; and the Court finds "that no resolution of said Board

of Trustees was ever passed authorizing said bonds to be issued to said Bowers, or designating the denomination of the same.

" It is a general and fundamental principle of law that *all* persons contracting with a municipal corporation must, *at their peril, inquire into the power* of the corporation or its officers to make the contract; and a contract beyond the scope of the corporate power is void, although it be under the seal of the corporation." (Dillon on Municipal Corporations, sec. 372.) And where the *mode* of contracting " is specially and plainly prescribed and limited, that mode is exclusive, and must be pursued, or the contract will not bind the corporation." (Dillon on Municipal Corporations, sec. 373.) In *Argenti* v. *San Francisco*, 16 Cal. 283, Mr. Justice Field says : " A municipal corporation can only act in the cases and in the *mode* prescribed by its charter." In *McCracken* v. *San Francisco*, 16 Cal. 620, the same learned Judge, in delivering the opinion of the Court, says the Common Council " were the mere agents of the corporation, and possessed only such powers as were specially delegated to them by the charter; and when that instrument granted a power with a specific designation as to the *mode* in which it should be used, the mode was restrictive—no other mode could be followed." In *Zottman* v. *San Francisco*, 20 Cal. 102, the Court says : " The rule is general, and applies to the corporate authorities of all municipal bodies—when the *mode* in which their power on any given subject can be exercised is prescribed by their charter, the mode must be followed. The mode in such cases constitutes the measure of the power." The same proposition was affirmed in *Murphy* v. *Napa County*, 20 Cal. 503 ; *French* v. *Teschemacher*, 24 Cal. 550 ; *Herzo* v. *San Francisco*, 33 Cal. 145 ; *People* v. *Tomlinson*, 35 Cal. 507, and in later cases.

In this case, the ordinances, as ratified by the act of the Legislature, prescribed definitely and precisely the mode and the only mode in which the bonds could be issued and delivered, to wit, by a resolution of the Board of Trustees, directing when and to whom the bonds were to be issued and delivered. Nor can this requirement be regarded as merely directory, a violation of which would not impair the validity of the bonds. On

the contrary, it was intended as a precaution against an abuse of its power by the Board of Trustees, and to prevent a fraudulent or unauthorized delivery by the Clerk to a person not entitled to receive the bonds. Under the terms of the ordinance, no bond could be issued or delivered, except upon a resolution of the Board appearing upon its minutes or the record of its proceedings, thus furnishing a most important safeguard against fraud and an abuse of power. Every person dealing in the bonds is bound, at his peril, to inquire whether they were issued in the mode prescribed; and as the mode is the measure of the power, the bonds would be void in the hands of a holder for value without actual notice, if issued in any other mode. We are therefore of opinion that the bonds in controversy would be void in the hands of a *bona fide* holder, and would not be a valid charge against the city. It results that the plaintiff as a tax payer can suffer no damage if the bonds are put in circulation, and has no cause of action.

Judgment and order reversed, and cause remanded.

Mr. Justice McKINSTRY and Mr. Chief Justice WALLACE expressed no opinion.