## McDONALD *v.* HOVEY & Another.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued January 30th and 31st, 1884.—Decided March 3d, 1884.

*Limitations, Statute of—Statutes, Construction of.*

The construction usually given to statutes of limitations, that a disability mentioned in the act must exist at the time the action accrues in order to prevent the statute from running, and that after it has once commenced to run no subsequent disability will interrupt it, is to be given to Rev. Stat. § 1008, prescribing the time within which writs of error shall be brought or appeals taken to review in this court judgments, decrees or orders of a Circuit or District Court in any civil action at law or in equity.

Where English statutes, such as the Statute of Frauds and the Statute of Limitations, have been adopted into our own legislation, the known and settled construction of those statutes by courts of law has been considered as silently incorporated into the acts, or has been received with all the weight of authority.

Upon a revision of statutes a different interpretation is not to be given to them without some substantial change of phraseology other than what may have been necessary to abbreviate the form of the law. - *Pennock* v. *Dialogue,* 2 Pet. 1, cited and approved.

The English and American cases construing statutes of limitations as affected by disability provisos reviewed.

The only question decided in this case relates to the taking of the appeal : It was not taken within the two years named in Rev. Stat. § 1008. The appellant set up the disability of imprisonment as cause for the delay.

*Mr. J. Noble Hayes* and *Mr. Skipwith Wilmer* for appellant.

*Mr. George F. Edm* ..ds and *Mr. Chas. W. Hornor* for appellees.

MR. JUSTICE BRADLEY delivered the opinion of the court.

The decree appealed from in this case was rendered on the 17th of April, 1878, and the appeal was not taken until the 6th of September, 1883. § 1008 of the Revised Statutes declares that

" No judgment, decree, or order of a Circuit or District Court in any civil action, at law or in equity, shall be reviewed by the Supreme Court, on writ of error or appeal, unless the writ of error is brought, or the appeal is taken, within two years after the entry of such judgment, decree, or order : *Provided,* That where a party entitled to prosecute a writ of error or to take an appeal is an infant, insane person, or imprisoned, such writ of error may be prosecuted, or such appeal may be taken, within two years after the judgment, decree, or order, exclusive of the term of such disability."

As more than five years elapsed after the entry of the decree in this case before the appeal was taken, of course the appeal was barred by lapse of time unless the appellant was within one of the exceptions contained in the proviso. He claims that he was within one of these exceptions. He states in his petition of appeal, and the fact is not disputed, that being sued

in the city of New York upon the decree appealed from, and judgment being rendered against him, his body was taken in execution, and on the 7th of February, 1879, he was thrown into the county jail of New York, where he has ever since remained, and is now kept in close confinement. As only ten months elapsed after the entry of the decree when the appellant was thrown into prison, and as he has been in prison ever since, he contends that two years, exclusive of the term of his imprisonment, had not expired when his appeal was taken.

This answer cannot avail the appellant if that construction be given to the statute which has almost uniformly been given to similar statutes in England and this country. The construction referred to is, that some or one of the disabilities mentioned in the proviso, must exist at the time the action accrues, in order to prevent the statute from running; and that after it has once commenced to run, no subsequent disability will interrupt it. This was the rule adopted in the exposition of the statute of 21 Jac. 1, c. 16, the English statute of limitations in force at the time of the first settlement of most of the American colonies. It is provided by the seventh section of that statute,

" That if any person entitled to bring any of the personal actions therein mentioned, shall be 'at the time of any such cause of action given or accrued,' within the age of twenty-one years, *feme covert*, *non compos mentis*, imprisoned or beyond the seas, such person shall be at liberty to bring the same actions within the times limited by the statute, after his disability has terminated." (Angell on Lim., chap. XIX).

It is true that the express words of this statute refer to disabilities existing " at the time " the cause of action accrues, and do not literally include disabilities arising afterwards. The courts, however, held that such was not only the literal, but the true and sensible meaning of the act; and that to allow successive disabilities to protract the right to sue would, in many cases, defeat its salutary object, and keep actions alive perhaps for a hundred years or more; that the object of the statute was to put an end to litigation, and to secure peace and repose; which would be greatly interfered with and often

wholly subverted, if its operation were to be suspended by every subsequently accruing disability. A very exhaustive discussion of the subject had arisen in the time of Queen Elizabeth, in the case of *Stowell* v. *Zouch*, Plowd. 353*a*, in the construction of the Statute of Fines, passed in 4 Hen. 7, c. 24, which gave five years to persons not parties to the fine to prosecute their right to the land; but if they were women covert, or persons within the age of twenty-one years, in prison, or out of the realm, or not of whole mind at the time of the fine levied, they were allowed five years to prosecute their claim after the disability should cease. In that case, a person having a claim to land, died three years after a fine was levied upon it without commencing any suit, and leaving an infant heir; and it was held that the heir could not claim the benefit of his own infancy, but must commence his suit for the land within five years from the levying of the fine; because the limitation commenced to run against his ancestor, and having once commenced to run, the infancy of the heir did not stop it. The same construction was given, as already stated, to the general statute of limitations of 21 Jac. 1, before referred to. In *Doe* v. *Jones*, 4 T. R. 300, Lord Kenyon said:

"I confess I never heard it doubted till the discussion of this case, whether, when any of the statutes of limitations had begun to run, a subsequent disability would stop their running. If the disability would have such an operation on the construction of one of those statutes, it would also on the others. I am very clearly of opinion on the words of the statute of fines, on the uniform construction of all the statutes of limitation down to the present moment (1791), and on the generally received opinion of the profession on the subject, that this question ought not now to be disturbed. It would be mischievous to refine, and to make distinctions between the cases of voluntary and involuntary disabilities [as was attempted in that case]; but in both cases, when the disability is once removed, the time begins to run."

To the same effect are *Doe* v. *Jesson*, 6 East, 80, and many cases in this country referred to in Angell on Limitations, *qua supra*, and in Wood on Limitations, sect. 251. In a case that

came to this court from Kentucky, in 1816, Ch. Justice Marshall said:

" The counsel for the defendants in error have endeavored to maintain this opinion by a construction of the statute of limitations of Kentucky. They contend, that after the statute has begun to run, it stops, if the title passes to a person under any legal disability, and recommences after such disability shall be removed. This construction, in the opinion of this court, is not justified by the words of the statute. Its language does not vary essentially from the language of the statute of James, the construction of which has been well settled ; and it is to be construed as that statute, and all other acts of limitation founded on it, have been construed." *Walden* v. *Gratz's Heirs*, 1 Wheat. 292, 296.

And in the subsequent case of *Mercer's Lessee* v. *Selden*, 1 How. 37, 51, the court took the same view in a case arising in the State of Virginia, in which the right of action accrued to one Jane Page, an infant within the exception of the statute; and it was insisted that her marriage before she was twenty-one added to her first disability (of infancy) that of coverture. But the court held otherwise, and decided that only the period of infancy, and not that of coverture, could be added to the time allowed her for bringing the action. The same doctrine was held in *Eager* v. *Commonwealth*, 4 Mass. 182; *Fitzhugh* v. *Anderson*, 2 Hen. & Mun. 306; *Parsons* v. *McCracken*, 9 Leigh, 495; *Demarest* v. *Wynkoop*, 3 Johns. Ch. 129; *Bunce* v. *Wolcott*, 2 Conn. 27.

In most of the State statutes of limitation the clauses of exception or provisos in favor of persons laboring under disabilities employ terms equivalent to those used in the English statute, expressly limiting the exception to cases of disability existing when the cause of action accrues. But this is not always the case. The statutes of New York in force prior to the Revised Statutes limited the time for bringing real actions to twenty-five years after seizin or possession had, and the proviso in favor of persons laboring under disabilities was in these words :

"Provided always, That no part of the time during which the plaintiff, or person making avowry or cognizance, shall have been within the age of twenty-one years, insane, *feme covert*, or imprisoned, shall be taken as part of the said limitation of twenty-five years." 1 Rev. Laws, 1813, p. 185, sect. 2 ; 2 Greenleaf's Laws, 95, sect. 6.

It will be observed that this proviso is stronger in favor of cumulative and subsequently accruing disabilities than that of the act of Congress which we are now considering; yet the Supreme Court of New York, and subsequently this court, gave it the same construction in reference to such disabilities as had always been given to the English statute of fines and statute of limitations. In the case of *Bradstreet* v. *Clarke*, 12 Wend. 602, which was a writ of right, and was argued by the most eminent counsel of the State, it was strenuously contended that the proviso referred to, being different from that of the English statutes in not referring to disabilities existing when the cause of action accrued, a different construction ought to be given to it, and the disabilities named, though commencing subsequently, and even after the statute began to run, ought to be held to interrupt it. The court, however, did not concur in this view, but held that the coverture of the demandant occurring after the statute began to run could not be set up against its operation. Mr. Justice Sutherland said :

"It is believed that the same construction has uniformly been given to this proviso in this respect as to that in relation to possessory actions [contained in a different section of the act], that where the statute has once begun to run a subsequently accruing disability will not impede or suspend it."

Although the case did not finally turn on this point, the attention given to it by counsel and the apparent unanimity of the court, then consisting of Savage, chief justice, and Sutherland and Nelson, justices, give to that opinion a good deal of weight.

The same question afterwards arose in this court in the case of *Thorp* v. *Raymond*, 16 How. 247. That was an action

of ejectment, used in place of a writ of right, to try the title to lands in New York. The plaintiff's grandmother acquired a right of entry to the lands in 1801, but was then insane, and remained so till her death in 1822. Her only daughter, and heir, was a married woman, and remained such till the death of her husband in 1832. The action was not commenced until 1850. The plaintiff contended that, under the proviso referred to, the daughter's disability of coverture ought to be added to the mother's disability of insanity; and that this would save the action from the bar of the statute, whether under the limitation of twenty-five years or that of twenty years. But the court held that the disabilities could not be connected in this way. Mr. Justice Nelson, delivering the opinion, and having shown that the proposed cumulation was inadmissible under the third section of the act, considering the action as one of ejectment, disposed of the other view as follows:

"But it is supposed that the saving clause in the second section of this act, which prescribes a limitation of twenty-five years as a bar to a writ of right, is different, and allows cumulative disabilities; and as ejectment is a substituted remedy in the court below for the writ of right, it is claimed the defendant is bound to make out an adverse possession of twenty-five years, deducting successive or cumulative disabilities. This, however, is a mistake. The saving clause in this second section, though somewhat different in phraseology, has received the same construction in the courts of New York as that given to the third section." [Citing the case of *Bradstreet* v. *Clarke*, in the decision of which the learned justice had participated.]

The statute of limitations of Texas is another instance in which language is used quite different from that of the English statute. After prescribing various limitations, the eleventh section provides for disabilities, as follows:

"No law of limitations, except in the cases provided for in the eighth section of this act, shall run against infants, married women, persons imprisoned, or persons of unsound mind, during the existence of their respective disabilities; and when the law of limitations did not commence to run prior to the existence of

these disabilities, such persons shall have the same time allowed them after their removal that is allowed to others by this and other laws of limitations now in force."   Oldham & White, Art. 1352.

According to the literal sense of this section, if one disability should prevent the statute from running until another supervened, the latter would be equally effectual to interrupt it. But the Supreme Court of Texas, in *White* v. *Latimer*, 12 Texas, 61, held otherwise, and decided that one disability cannot be tacked on to another; but that the long-established rule in construing statutes of limitations must be applied. The court say :

"The 11th section of the statute is not in its terms materially different from the exception contained in the statute of James, and cannot claim a different construction from that ; and a departure from the rule so long and well established, that it applies to the particular disability existing at the time the right of action accrued, would introduce the evil so strongly deprecated by the most eminent English and American judges, of postponing actions for the trial of rights of property to an indefinite period of time, by the shifting of disabilities, from infancy to coverture, and again from coverture to infancy, an evil destructive of the best interests of society, and forbidden by the most sound and imperious policy of the age."

The authority of these cases goes far to decide the one before us.   The proviso in the New York statute certainly was more general in its terms in describing the disabilities which would stay the operation of the statutes—described them more independently of the time when the cause of action accrued— than the act of Congress under consideration ; and the courts, in giving it the construction they did, seemed to be largely influenced by the established interpretation given to similar statutes in *pari materia*, without having in the statute construed any express words to require such a construction.   But in the case before us, the fair meaning of the *words* leads to the same result.   The language is as follows :

"No judgment, decree or order . . . shall be reviewed in the Supreme Court, . . . unless the writ of error is brought or the appeal is taken within two years after the entry of such judgment, decree or order: *Provided,* That where a party entitled to prosecute a writ of error or to take an appeal is an infant, insane person, or imprisoned, such writ. of error may be prosecuted or such an appeal may be taken within two years after the judgment, decree, or order, exclusive of the term of such disability."

"*Is* an infant," when? "*Is* an insane person, or imprisoned," when? Evidently, when the judgment, decree or order is entered. That is the point of time to which the attention is directed. The evident meaning is, that if the party is an infant, insane, or in prison when the judgment or decree is entered, and therefore when he or she becomes entitled to the writ of error or appeal, the time to take it is extended. In all the old statutes this was expressed in some form or other; this was their settled meaning. It will also be deemed to be the meaning of this statute unless its language clearly calls for a different meaning. But, as seen, it does not.

Section 1008 of the Revised Statutes was taken directly from the "Act to further the administration of justice," approved June 1st, 1872, and is a mere transcript from the second section of that act. 17 Stat. 196. But this was a revision of the twenty-second section of the Judiciary Act of 1789, and if we turn back to that section we shall find that, with regard to the point under consideration, its language was, in effect, substantially the same as that of the present law. It was as follows:

"Writs of error shall not be brought but within five years after rendering or passing the judgment or decree complained of ; or in case the person entitled to such writ of error be an infant, *feme covert, non compos mentis,* or imprisoned, then within five years as aforesaid, exclusive of the time of such disability."

"*Be* an infant," *when?* "*Be* a *feme covert, non compos,* or imprisoned," *when?* The same answer must be given as before, namely: when he or she becomes entitled; *i.e.,* when the judgment or decree is entered.

The phraseology of the act of 1872, and of the 1008th section, of the Revised Statutes is so nearly identical with that of the 22d section of the act of 1789, in reference to the point under consideration, that we must presume they were intended to have the same construction, and the act of 1789 contains no language which requires that it should have a different construction from that which had long been established in reference to all the statutes of limitation then known, whether in the mother country or in this. On the contrary, as we have seen, the terms of the act of 1789 fairly call for the same construction which had for centuries prevailed in reference to those statutes.

It is a received canon of construction, acquiesced in by this court,

"That where English statutes, such, for instance, as the Statute of Frauds and the Statute of Limitations, have been adopted into our own legislation, the known and settled construction of those statutes by courts of law has been considered as silently incorporated into the acts, or has been received with all the weight of authority." *Pennock* v. *Dialogue*, 2 Pet. 1, 18 ; Smith's Commentaries on Stat. and Const. Law, § 634 ; Sedgwick on Construction of Stat. and Const. Law, 363.

And even where inadvertent changes have been made by incorporating different statutes together, it has been held not to change their original construction. Thus, in New Jersey, where several English statutes had been consolidated, a proviso in one of them, broad enough in its terms to affect the whole consolidated law, was held to affect only those sections with which it had been originally connected. Chief Justice Green said :

"Where two or more statutes, whose construction has been long settled, are consolidated into one, without any change of phraseology, the same construction ought to be put upon the consolidated act as was given to the original statutes. A different construction ought not to be adopted if thereby the policy of the act is subverted or its material provisions defeated." *In re Murphy*, 3 Zab. 180.

So, upon a revision of statutes, a different interpretation is not to be given to them without some substantial change of phraseology—some change other than what may have been necessary to abbreviate the form of the law. Sedgwick on Const. Stat. 365. As said by the New York Court for the Correction of Errors, in *Taylor* v. *Delancey*, 2 Caines' Cas. 143, 150 :

"Where the law antecedently to the revision was settled, either by clear expressions in the statutes, or adjudications on them, the mere change of phraseology shall not be deemed or construed a change of the law, unless such phraseology evidently purports an intention in the legislature to work a change." And see *Yates' Case*, 4 Johns. 317; *Theriat* v. *Hart*, 2 Hill, 380 ; *Parmelee* v. *Thompson*, 7 Hill, 77; *Goodell* v. *Jackson*, 20 Johns. 693; *Croswell* v. *Crane*, 7 Barb. 191. "The construction will not be changed by such alterations as are merely designed to render the provisions more precise." *Movers* v. *Bunker*, 29 N. H. 421.

So the Supreme Court of Alabama has held that the legislature of that State in adopting the Code, must be presumed to have known the judicial construction which had been placed on the former statutes; and, therefore, the re-enactment in the Code of provisions substantially the same as those contained in a former statute is a legislative adoption of their known judicial construction. *Duramus* v. *Harrison*, 26 Ala. 326.

"A change of phraseology in a revision will not be regarded as altering the law where it had been well settled by plain language in the statutes, or by judicial construction thereof, unless it is clear that such was the intent." Sedgwick on Construction, 2d ed. 229, note.*

Of course, a change of phraseology which necessitates a change of construction will be deemed as intended to make a change in the law. *Young* v. *Dake*, 1 Seld. 463.

In view of these authorities and of the principles involved in

---

* Referring to *Hughes* v. *Farrar*, 45 Me. 72; *Burnham* v. *Stevens*, 33 N. H. 247; *Overfield* v. *Sutton*, 1 Metc. (Ky.) 621; *McNamara* v. *Minnesota Central Railway Company*, 12 Minn. 388; *Conger* v. *Barker*, 11 Ohio St. 1.

them, and from a careful consideration of the language of the law itself, we are satisfied that it was not the intention of Congress, either in the 22d section of the act of 1789, or in the 2d section of the act of 1872, or in the 1008th section of the Revised Statutes, to change the rule which had always, from the time of Henry Seventh, been applied to statutes of limitation, namely, the rule that no disability will postpone the operation of the statute unless it exists when the cause of action accrues; and that when the statute begins to run no subsequent disability will interrupt it.

This conclusion disposes of the case. As the appellant was free from any disability for several months after the entry of the decree appealed from, the statute commenced to run at that time, and, therefore, the time for taking the appeal expired several years before it was actually taken.

*The appeal is therefore dismissed.*