[L. A. No. 3544.   In Bank.—May 25, 1916.]

## A. M. HAM, Respondent, v. GRAPELAND IRRIGATION DISTRICT (a Public Corporation), Appellant.

Pleading—Action on Bonds—Payment at Specified Place upon Surrender—Presentation, Offer to Surrender and Demand Need Not Be Alleged.—In an action to recover on bonds which are made payable at a particular place upon surrender thereof, the facts of presentation, offer to surrender, and demand are not necessary to be alleged or proved in order to entitle the plaintiff to judgment. If the defendant was ready, able, and willing to pay upon presentation and surrender at the place designated, such fact should be pleaded by way of defense, not to a recovery upon the bonds, but of any obligation to pay costs, interest, or damage for delay in payment.

Irrigation District—Negotiable Bonds—Illegal Issue—Payment for Supplies at Less Than Face Value—Mala Fide Purchasers.—Bonds of an irrigation district organized under the act of March 7, 1887 (Stats. 1887, p. 29), negotiable in form, which are issued and taken in payment of supplies furnished the district on the basis of ninety cents on the dollar of their face value, in contravention of the provision of the act requiring them, except when issued in exchange for property at par, to be sold for cash at ninety cents on the dollar, are void in the hands of the original purchaser and of subsequent owners having notice of their infirmity.

Id.—Bona Fide Purchaser of Bonds Illegally Issued—Transfer for Collection.—A purchaser of such bonds before maturity for value and in the ordinary course of business, without notice of the fact that they had been so issued, is a *bona fide* holder, and his transferee for collection, although having notice of the illegality in their issuance, may recover thereon.

Id.—Principal Charged With Notice to Agent—Knowledge by Agent of Illegality of Bonds.—A purchaser of such bonds through an agent is charged with the agent's knowledge of the illegality of the issue as to the bonds so purchased, but is not so charged as to bonds with the purchase of which the agent had no connection.

Id.—Consideration—Bonds Issued at Par for Purchase of Property.—Bonds issued by such district at par in payment of the purchase price of property are for a legal consideration, notwithstanding the district may have made a bad bargain in purchasing the property.

Id.—Negotiable Bonds of Municipality—Certificate of Officers to Regularity of Proceedings.—Where a municipal corporation has

the power, upon the performance of certain conditions precedent, to issue bonds, and its officers through whom it acts are charged with ascertaining and determining the facts which constitute such performance and certify on the face of the bonds to a compliance therewith, the municipality is estopped from pleading nonperformance as a defense to such bonds in the hands of a *bona fide* holder. This principle is applicable to bonds of an irrigation district issued under the act of March 7, 1887, which, as provided by such act, are negotiable in form, and certify full compliance with the requirements of the act.

APPEAL from a judgment of the Superior Court of San Bernardino County. Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

Leonard & Surr, for Appellant.

C. C. Haskell, Byron Waters, and J. W. Curtis, for Respondent.

VICTOR E. SHAW, J., *pro tem.*—Appellant, an irrigation district, issued certain bonds, to recover judgment upon part of which issue this action was brought.

In its answer defendant admitted the issuance of the bonds, but averred that they were unlawfully issued in that they were erroneously dated; that there was no value or lawful consideration paid therefor; that recovery thereon was barred by the statute of limitations; and that instead of being sold for cash they were, contrary to the provisions of the act authorizing their issue, exchanged for labor, commodities, and supplies.

The bonds and coupons described in the complaint, the due execution of which by the officers of the district in the form required by the act and their authority so to do is not questioned, together with accrued interest thereon, amounted to the sum of $15,098.30. The court found that plaintiff was the legal holder of all the bonds; that a portion thereof, evidenced by coupons which had matured more than four years prior to the filing of the complaint, was barred by subdivision 1 of section 337 of the Code of Civil Procedure; and that certain of the bonds were acquired by plaintiff in payment for groceries and supplies sold defendant, by reason whereof plaintiff was not entitled to recover thereon. Excluding the

bonds as to which it was held no recovery could be had, left remaining bonds, coupons, and accrued interest amounting to the sum of $4,444, for which judgment was rendered for plaintiff, and from which defendant prosecutes this appeal upon a bill of exceptions.

At all the times in question defendant was an irrigation district organized and existing under an act of the legislature of the state of California, entitled "An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes," approved March 7, 1887 (Stats. 1887, p. 29). In the exercise of power conferred by said act, defendant authorized its officers to issue bonds in the sum of two hundred thousand dollars, of which the bonds in question are part thereof. The bonds upon which the judgment is based are all negotiable in form, dated January 1, 1891, and on their face recite that they were "issued by authority of, pursuant to, and after a full compliance with all the requirements of the act of the legislature of the State of California, entitled 'An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes,' approved March 7, 1887, and the acts amendatory and supplementary thereto," all as provided in section 15 of the act. They may be divided into three classes, designated as follows: 1. The Bradshaw bond, numbered 1, for five hundred dollars, sold and delivered on March 1, 1892, claimed to have been acquired thereafter by plaintiff in the ordinary course of business for a valuable consideration and without notice of any want of consideration paid therefor. 2. The Curtis bonds, being ten in number, each for the sum of one hundred dollars, which bonds were transferred to plaintiff for collection and which, it is claimed, were for a valuable consideration, acquired by Curtis, before maturity and without notice of alleged defects or want of consideration and from holders thereof other than defendant. 3. The remainder of the bonds included in the judgment may be designated as the Ham bonds, being those found by the court to have been acquired from parties other than defendant by plaintiff in the ordinary course of business, for a valuable

consideration and without any notice of the facts upon which appellant insists they are void.

Appellant's first contention is that, since the bonds provided that the installments of principal were payable only upon the surrender of coupons evidencing such principal, and the interest coupons provided for their payment at the office of the treasurer upon surrender thereof, the facts of presentation, offer to surrender, and demand should have been alleged and proved in order to entitle plaintiff to judgment. Section 3130 of the Civil Code provides that if the negotiable instrument "is by its terms payable at a specified place," and the maker thereof "is able and willing to pay it there at maturity, such ability and willingness are equivalent to an offer of payment upon his part." And section 3137 of the Civil Code declares that as a condition concurrent to the payment of a negotiable instrument, the maker thereof may require "that the instrument be surrendered to him, unless it is lost or destroyed, or the holder has other claims upon it." If defendant was ready, able, and willing to pay the bonds upon presentment and surrender thereof at the place designated, such fact should have been pleaded by way of defense (*Irvine* v. *Withers,* 1 Stew. (Ala.) 234); not to the recovery upon the bond, however, but in defense of any obligation to pay costs, interest, or damage for delay in payment. As stated by Justice Field in a very early case: "The undertaking of the parties, and the legal effect of such contracts is this: that if ready at the time and place with the funds, the obligor has so far satisfied the contract that he cannot be responsible for any future damages, either as costs of suit or interest for delay; not that he is thereby discharged of the debt." (*Montgomery* v. *Tutt,* 11 Cal. 307.) No claim is made that defendant was ready, able, and willing to pay the bonds and coupons had they been presented and an offer made to surrender them; indeed, it appears that to have done so would have been a futile act.

Appellant's chief contention is that the bonds, contrary to the provisions of the act, were originally sold and delivered to purchasers thereof from whom plaintiff, with notice that they were disposed of in violation of law, acquired them, and even though acquired without notice prior to maturity and for value in the ordinary course of business, the bonds were nevertheless, by reason of the violation of the provisions of

the act by the officers of the district in the sale and issue
thereof, void in his hands.

All of the bonds involved in the suit, other than the Brad-
shaw bond No. 1, were part of a purported issue and sale of
one hundred and fifty thousand dollars in bonds, made by
the officers of the district to one J. W. Mattern in the manner
following: The bonds were duly advertised for sale, and it
appearing there would be no bids for them, an understand-
ing was had with Mattern whereby it was agreed that he
should make a bid therefor of ninety cents on the dollar,
which the board should and did accept; it being understood
and agreed that Mattern, however, should assume no obliga-
tion to take or pay for the bonds so pretended to be pur-
chased by him and the officers of the district were to retain
possession thereof, and as they were, if at all, in fact sold
and disposed of, deliver them to the real purchaser in the
name of and under the pretense that they belonged to Mat-
tern. Under the provisions of the act the bonds, other than
in exchange for property at par, could not be disposed of,
except by sale for cash at ninety cents on the dollar. Unable
to secure purchasers of the bonds, and the board of directors
being desirous of constructing its irrigating system and
developing water therefor, and having no money on hand
wherewith to do the work, they, as a part of the scheme,
adopted the further plan of purchasing material, goods, and
supplies and procuring labor to be performed, ostensibly for
cash, but in fact for bonds, by agreeing with plaintiff and
his firm that they would buy groceries and supplies from him
and at the end of the month, upon rendering his statement
therefor, he should give his check for bonds at ninety cents
on the dollar, and upon presenting the same, together with
his monthly bill, they would deliver to him bonds in the
amount of his check so received and return the check to him,
it being understood that the check should not be cashed.
One J. L. Adams, who at the time the arrangement was made
was a director of the district and thereafter superintendent
of construction, acted as the agent of plaintiff in the transac-
tion had with the district, wherein and through such agency
plaintiff acquired a part of the bonds. *As to the bonds so
purchased* by plaintiff with groceries through Adams, the
court rendered judgment for defendant. A like arrange-
ment was made with various parties who furnished labor

and material for the district in the construction of its canals, conduits, and pipe-lines, pursuant to which they likewise gave their checks for the purchase of bonds to the extent of the work performed and materials furnished by them, for which bonds were issued and accepted at ninety cents on the dollar in payment of the bills rendered. The checks, pursuant to agreement, were not presented for payment nor paid, but merely used as the means of a purported compliance with the law, after which they were returned to the drawers thereof. The bonds and coupons upon which the judgment in favor of plaintiff was based were bonds so issued by defendant to other persons than plaintiff. That they were void in the hands of such purchasers and in the hands of subsequent owners thereof having notice of their infirmity is not questioned. (*Hughson* v. *Crane,* 115 Cal. 415, [47 Pac. 120] ; *Stimson* v. *Alessandro Irr. Dist.,* 135 Cal. 389, [67 Pac. 496, 1034] ; *Leeman* v. *Perris Irr. Dist.,* 140 Cal. 540, [74 Pac. 24].) As to these bonds, however, the court found they were purchased by plaintiff, and by Curtis, to whose rights the former succeeded, before maturity for value and in the ordinary course of business, and without notice of the fact that they had been issued in the manner stated. These findings are attacked upon the ground that they are not supported by the evidence. As to the Curtis bonds of the face value of one thousand dollars, it appears that plaintiff acquired them shortly prior to the commencement of the suit upon an agreement to pay Curtis seventy-five per cent of what might be realized thereon, thus making his possession that of a holder for collection. The question therefore presented is whether Curtis, as transferrer, was a *bona fide* holder, since if he was, his title and right to enforce payment could not be impaired by restrictions placed upon his power of disposal. (*Cromwell* v. *County of Sacramento,* 96 U. S. 51, [24 L. Ed. 681] ; Daniel on Negotiable Instruments, sec. 803.) In *Gunnison County Commrs.* v. *Rollins,* 173 U. S. 255, [43 L. Ed. 689, 19 Sup. Ct. Rep. 390], it is said: "A *bona fide* holder of commercial paper is entitled to transfer to a third party all the rights with which he is vested, and the title so acquired by his indorsee cannot be affected by proof that the indorsee was acquainted with defenses existing against the paper." The evidence of Mr. Curtis clearly and strongly tends to prove that in the ordinary course of business he

bought the bonds for a valuable consideration, paying cash therefor, and without any notice of the manner·in which the district had disposed of them or the consideration paid to it by the parties from whom he purchased. Even conceding that evidence was introduced or circumstances shown tending to contradict his statement, nevertheless it would, at most, present a question as to which there was a conflict of evidence, and the finding of the court, that Curtis at the time when he transferred the bonds to plaintiff was a *bona fide* holder thereof for value, must be sustained.

The finding of the court "that subsequently to the issuance of said bonds, and each of them, the plaintiff did in good faith and in the ordinary course of business, and for value, without any knowledge either actual or constructive of what the said Grapeland Irrigation District had received for said bonds, and before the apparent maturity of either said bonds or coupons, and without any knowledge of their actual dishonor, purchase each of said bonds and coupons alleged in plaintiff's complaint to be owned and held by him, except such notice as said plaintiff may have received from said district through the sale of groceries through one J. L. Adams, and except as hereinbefore found with reference to the bonds purchased of J. W. Curtis," paying therefor a valuable consideration, is based almost entirely upon testimony given by Mr. Ham. As to the bonds received by him through Adams as his agent in exchange for groceries and supplies furnished the district, the court found that he was not without notice that they were issued to him contrary to law. Conceding that, in the absence of other evidence tending to charge him with notice of the illegal issue, the knowledge of Adams while acting as his agent should, as held by the court, be imputed to him as to the bonds so bought through Adams, nevertheless the latter had nothing to do with the purchase of the bonds involved in the judgment. "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." (Civ. Code, sec. 2332.) While Adams had full knowledge of the unlawful scheme adopted by the district in disposing of the bonds, no duty devolved upon him, within the scope of his authority, to acquaint plaintiff with the facts thereof, other than as such facts affected the bonds

involved in the transaction in connection with which he represented plaintiff. He was in no wise connected with the purchase of any bonds upon which the judgment is based. Conceding, as claimed by appellant, that by reason of the fact that the bonds were sold for an illegal consideration, the burden of proof devolved upon plaintiff to show that he was without notice of such infirmity (*Union Collection Co.* v. *Buckman,* 150 Cal. 159, [119 Am. St. Rep. 164, 11 Ann. Cas. 609, 9 L. R. A. (N. S.) 568, 88 Pac. 708]; *Graham* v. *Larimer,* 83 Cal. 173, [28 Pac. 286]; *Shain* v. *Goodwin,* 46 Fed. 564), it cannot be said the finding is wanting in sufficient evidence to support it. The testimony of plaintiff touching the subject may be conflicting, but it was for the trial court to reconcile the apparent inconsistencies therein and determine the fact. Considered as a whole, plaintiff's testimony in effect tends to prove that as to the bonds in question he had no notice of the fact that they were illegally issued. That plaintiff bought them in the ordinary course of business from parties other than the district, paying therefor a valuable consideration, clearly appears.

It appears that the Bradshaw bond was one of a block of twenty-eight thousand dollars in bonds issued at par in payment of the purchase price of property. The district cannot invoke as a defense to this bond the alleged fact that it made a bad bargain in purchasing the property. "The want of consideration for the undertaking of a maker, acceptor, or indorser of a negotiable instrument does not exonerate him from liability thereon to an indorsee in good faith for a consideration." (Civ. Code, sec. 3122.) There was nothing illegal in the consideration originally paid for this bond.

It is next strenuously insisted that, regardless of how plaintiff acquired the bonds, and conceding his acquisition to have been without notice of their infirmity, they are nevertheless void and unenforceable in his hands. This contention is based upon section 42 of the act, which provides: "The board of directors, or other officers of the district, shall have no power to incur any debt or liability whatever, either by issuing bonds, or otherwise, in excess of the express provisions of this act, and any debt or liability incurred in excess of such express provisions, shall be and remain absolutely void." In discussing this question appellant directs our attention to the fact that the act provides only two ways in

which the district may issue bonds: One by sale thereof for cash at ninety cents on the dollar; the other, as in the case of the Bradshaw bond, in exchange for property at par. Our attention is also directed to the fact that the bonds were ante-dated, being dated January 1, 1891, and not actually sold and issued until some two or three years thereafter. As hereinbefore stated, all the bonds were in form negotiable, as required by section 15 of the act, and each bond recites, as required by said section, that it ''is one of a series of bonds amounting in the aggregate to two hundred thousand dol-lars, caused to be issued by the board of directors of said Grapeland Irrigation District, and pursuant to a vote of the electors in said district at an election held for that purpose on the fifteenth day of November, 1890, . . . and issued by authority of, pursuant to, and after a full compliance with all the requirements of the act of the legislature of the state of California, entitled,'' etc. If appellant's position is cor-rect, then no purpose is subserved by the express require-ment that the bonds shall be negotiable in form; nor, if the district may, as against *bona fide* holders of bonds, be heard to deny the facts so certified, does the recital of compliance with the provisions of the act as required in issuing the bonds serve any purpose whatsoever. The authorities seem to be uniform in holding that where a municipality has the power, upon the performance of certain precedent conditions, to issue bonds, and its officers through whom it acts are charged with ascertaining and determining the facts which constitute such performance and certify on the face of the bonds to a com-pliance therewith, the municipality is estopped from plead-ing nonperformance as a defense to such bonds in the hands of a *bona fide* holder thereof. Thus, in *San Antonio* v. *Mehaffy*, 96 U. S. 312, [24 L. Ed. 866], it is said: ''If a municipality could, under any circumstances, issue negotia-ble securities, the *bona fide* holder of them has a right to presume they were issued under the circumstances which give the authority. The municipality is estopped by the recital on the face of the securities to deny their verity as against a *bona fide* purchaser.'' And in *Grattan Township* v. *Chil-ton*, 97 Fed. 145, [38 C. C. A. 84], it is said: ''If, under any circumstances, the board would have had authority to issue them, and the bonds would have been valid, innocent pur-chasers had the right to presume that those circumstances

existed when they were issued, and the township was estopped to deny their existence after such purchasers had bought them in reliance upon the certificate that they were issued in compliance with the statute." To the same effect is Dillon on Municipal Corporations, 5th ed., sec. 897; *Gunnison County Commrs.* v. *E. H. Rollins & Sons,* 173 U. S. 256, [43 L. Ed. 689, 19 Sup. Ct. Rep. 390]; *Town of Coloma* v. *Eaves,* 92 U. S. 484, [23 L. Ed. 579]; *Baxter* v. *Vineland Irr. Dist.,* 136 Cal. 185, [68 Pac. 601]; *Stanly County Commrs.* v. *Coler & Co.,* 190 U. S. 438, [47 L. Ed. 1126, 23 Sup. Ct. Rep. 811]. If the recital of "full compliance with all the requirements of the act" be held for naught, then it must necessarily follow that, notwithstanding the negotiable form of the bonds and the fact that title thereto passed by mere delivery, no value would attach to them, since their validity would always be open to contest as to the truth of a fact that the most diligent inquiry might fail to disclose. To so hold would, in our opinion, not only lead to disastrous consequences never intended by the legislature, but would render nugatory the provision that the bonds should be negotiable in form and also destroy the effect of the recitals required to be made therein. We may reconcile the apparent inconsistency of the section with other parts of the act and give full effect to the provision by applying the principle of estoppel, in view of which we must assume it was adopted by the legislature. Defendant conferred upon its officers the power to issue the bonds which they were authorized to sell upon complying with certain statutory provisions. From the fact that the statute required a recital of such compliance to be made in the bonds *by such officers,* it follows that they were charged with the determination of the question, and it was not intended they should certify to a falsehood, but to facts which were true. Vested with this power to determine what constituted "full compliance," and having so certified upon the face of the bonds, the district will not be heard, as against a *bona fide* holder of bonds without notice of the alleged irregularity in the sale thereof, to say that the facts thus solemnly recited and upon which he innocently parted with his money are false. The purpose of estoppel is to conclude the truth in order to prevent fraud and falsehood. It is "an admission or determination under circumstances of such solemnity that the law will not allow the fact so admitted or established

to be afterward drawn in question between the same parties or their privies." (*Sly* v. *Hunt*, 159 Mass. 151, [38 Am. St. Rep. 403, 21 L. R. A. 680, 34 N. E. 187].) While, in fact, the bonds upon which the judgment is based were originally issued to purchasers having notice of the fact that the sale thereof was void, as provided in section 42 of the act, nevertheless, since plaintiff was a *bona fide* holder thereof having no notice of the irregularity in disposing of them for other consideration than cash at ninety cents on the dollar, he was entitled to rely upon the representations by way of recitals made in the bonds by the proper officers of the district, that they had fully complied with the provisions of the statute, and since it would be a fraud upon him to allow the district to plead the truth as against such recitals, it must be held to be estopped from so doing.

The judgment is affirmed.

Melvin, J., Shaw, J., Henshaw, J., Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.