[S. F. No. 15271. In Bank.—April 30, 1935.]

MORRIS MEYERFELD, Jr., et al., Petitioners, v. SOUTH SAN JOAQUIN IRRIGATION DISTRICT et al., Respondents; MARY E. MORRIS et al., Interveners.

410

McKinstry, Haber & Coombes, McKinstry & Haber and Pierce Coombes for Petitioners.

Thomas J. Straub and W. R. Dunn, as *Amici Curiae* on Behalf of Petitioners.

Nutter & Rutherford for Respondents.

W. Coburn Cook and Clark, Nichols & Eltse for Interveners.

SHENK, J.—*Mandamus* to compel the respondent district and its officers to pay interest and principal on certain outstanding bonds of the district known as the sixth issue.

The district was organized under the California Irrigation District Act (Stats. 1897, p. 254). Thereafter, pursuant to elections duly held, the district issued and sold numerous bond issues. The first issue was dated July 1, 1910, and constituted bonds in the sum of $1,875,000, to become due serially 1931–1940. A second issue was dated April 18, 1913, due serially 1934–1943, in the sum of $1,170,000. A third issue was dated July 1, 1913, due serially 1934–1943, in the sum of $790,000. A fourth issue was dated September 1, 1919, due serially 1940–1959, in the sum of $500,000, and a fifth issue was dated November 6, 1923, due serially 1944–1963, in the sum of $550,000. The principal sum of these first five issues was therefore $4,885,000. An attempt is being made to adjust the foregoing five issues of bonded indebtedness by a proceeding in the federal court under section 80 of the National Bankruptcy Act. (See *Morris* v. *San Joaquin Irr. Dist.*, 2 Cal. (2d) 492 [41 Pac. (2d) 537].)

The sixth bond issue, now under consideration, is not specifically included in the plan of readjustment involved in the federal court proceeding. This sixth issue was in the sum of $1,100,000, due serially 1927–1965, with interest at five per cent per annum. These bonds were authorized at an election held in May, 1925. Of this issue, bonds in the sum of $900,000 were sold and delivered on August 1, 1925, pursuant to a bid accepted by the directors of the district on July 11, 1925, and the remaining $200,000 in bonds were sold and delivered in June, 1926, pursuant to a bid received on the eighth day of that month. All of the proceeds of the bonds of the sixth issue were used to construct the Melones dam on the Stanislaus River. Each block of said bonds was duly advertised to be sold. Sealed bids were invited and the bonds were issued in form the same as the prior general bonds of the district. These steps were taken in conformity with the requirements of the act as they existed when said steps were severally taken. But the bid submitted for the block of $900,000 in bonds contained the following condition: "This bid is made upon the condition that the acceptance of this bid by the district, and its sale and delivery of said bonds to the undersigned, shall constitute a contract obligation by the district,

to the undersigned and all subsequent holders of said bonds, or any thereof, that all moneys paid to the district by Pacific Gas and Electric Company and by Sierra and San Francisco Power Company under that certain contract bearing date January 2, 1925, between said parties, shall be used by the district as in said contract provided." The bid for the second block of $200,000 in bonds contained a condition in somewhat different phraseology but in legal effect the same.

The contract referred to in each conditional bid was executed under date of January 2, 1925, between the Oakdale Irrigation District and the South San Francisco Irrigation District, through their respective boards of directors, as first parties, and Pacific Gas and Electric Company and Sierra and San Francisco Power Company, as second parties. The instrument recited among other things that the several parties owned and controlled certain water rights on the main and south forks of the Stanislaus River and that it was the desire of all parties to the contract to settle all claims between them as to their respective rights .in and to the waters of said river and its tributaries by the construction by the districts of the Melones dam and the operation of a power plant in connection therewith by the power companies upon payment to the districts of $5,175,000 in semiannual instalments of $64,687.50 to each district. As to the disposition by the districts of such power revenues the contract contained this provision: "Such payments shall be used by Irrigation Districts for the following purposes: First, to pay the interest accrued upon the bonds, the proceeds from the sales of which were used to construct said Melones dam; second, to purchase and cancel, from time to time, any of said bonds outstanding, to the end that said bonds shall be retired and cancelled at the earliest practicable date; and, third, and thereafter for such other purposes as the district may desire."

After the power plant installed in connection with the dam was put in operation, the officers of the district established in its treasury separate funds called "Melones Bond Interest Fund" and "Melones Bond Redemption Fund". These funds were thereafter held and made applicable by the district board solely to the bonds of the sixth issue, and interest and principal requirements of such bonds have

been met from those special funds, except that payment of interest on said bonds for one year was made through moneys raised by tax levy in the district.

Intervener Mary E. Morris is the owner of bonds in the sum of $98,000 of the first five issues. Together with other owners representing in all six per cent of the entire first five issues, she refused to exchange her bonds for refunding bonds authorized by the electors of the district on August 14, 1931. Thereafter she commenced a proceeding in this court for a writ of mandate to compel the officers of the district, among other things, to levy an assessment sufficient to discharge the district's accrued obligations under her bonds, claiming that the district and its officers were, and had been paying obligations on the refunding bonds and ignoring her own demands until she should elect to exchange her bonds for refunding bonds, and in derogation of her rights. That proceeding was held in abeyance by this court until the termination of the federal court proceeding involving the first five issues. (*Morris* v. *South San Joaquin Irr. Dist., supra.*) The petition in the Morris proceeding was filed on June 26, 1934. Pending the determination of that proceeding some question arose as to the authority of the district to allocate moneys on hand in the Melones bond funds exclusively to the payment of obligations on the bonds of the sixth issue. Whereupon the officers of the district withheld further payments on bonds of the sixth issue from funds admittedly on hand in the Melones bond funds and available for such payments. The present proceeding was commenced on September 29, 1934, to compel the district and its officers to discharge the obligations under the bonds of the sixth issue from funds received by the district under the contract with the power companies.

The respondents herein filed an answer admitting generally the allegations of the petition and alleging that they had withheld payments on the petitioner's bonds from the special Melones bond funds by reason of the terms of the alternative writ in the Morris case which required them to pay the bond obligations on the Morris bonds from any bond funds of the district or show cause on a day certain why they had not done so. Thereafter Mary E. Morris and George F. Covell, as the owners of bonds of the first five issues, each filed a petition in intervention herein chal-

lenging the power of the district board to accept the conditional bids for bonds of the sixth issue, to establish the special Melones bond funds and to allocate said funds exclusively to the payment of bonds of the sixth issue. Demurrers to those petitions in intervention raise the sole question of the power and duties of the district board in the premises.

■ The powers of the board with reference to the alleged infringement of the rights of the interveners must necessarily be measured by the law in effect at the time the successive challenged steps were taken. (*W. B. Worthen Co.* v. *Kavanaugh,* 295 U. S. 56 [55 Sup. Ct. 555, 79 L. Ed. 1298, 97 A. L. R. 905] ; *Hershey* v. *Cole,* 130 Cal. App. 683 [20 Pac. (2d) 972], and cases therein cited.) ■ The powers and duties with respect to the sale of the $900,000 in bonds of the sixth issue will first be considered. These bonds were sold prior to the amendment of section 39 of the act in 1925. At the time of the authorization, sale and issuance of these bonds the Irrigation District Act provided a complete and unequivocal method of incurring indebtedness by the issue of bonds and of raising money in payment of the same. Such method was the measure of the power of the board. (*McCoy* v. *Briant,* 53 Cal. 247.) No question of the regularity of the authorization of bonds of the sixth issue is presented. The proceedings inviting proposals for the sale were regular. The bonds were advertised to be sold as general bonds of the district, the same in effect as in the case of the first five issues. Sealed bids were received. Section 32 of the act required that the board should award the bonds to the highest responsible bidder. Section 33 provided: ''Said bonds, and the interest thereon, shall be paid by revenues derived from an annual assessment upon the real property in the district; and all the land within the district shall be and remain liable to be assessed for such payments as hereinafter provided.''

As stated, the bonds of the sixth issue were issued in form the same as bonds of the prior issues, namely, as general bonds of the district. By section 33 of the act the law charged the lands in the district as security for the payment of said bonds. If the revenue from the power contract should fail for any reason the lands in the district would be liable to assessment in discharge of the indebted-

ness. Section 67 of the act provided for the establishment of a bond fund from which the holders of all bonds of the district had a right to demand payment. We find no provision in the act in effect when said bonds were issued authorizing the board to accept the conditional bid, nor to establish the special Melones bond funds, nor to allocate any revenues of the district exclusively to the payment of any bonded indebtedness. The petitioner asserts that the board had the implied power to do these things. The answer need not rest on general principles of law. The act itself supplies the answer in section 61, where it is declared: "The board of directors or other officers of the district shall have no power to incur any debt or liability whatever, either by issuing bonds or otherwise, in excess of the express provisions of this act." It requires no argument or citation of authority to support the conclusion that, in the face of the provisions of the statute, the board exceeded its powers in the respects challenged by the interveners.

The same result must follow as to the issuance of the remaining $200,000 of bonds sold in June, 1926. The only change in the law in the meantime and in any way applicable to the subject was an amendment of section 39 in 1925 (Stats. 1925, p. 488). The amendment provided that "the board of directors may in lieu, either in whole or in part, of levying the annual assessment for the payment of interest on or principal of bonds, or for any other purpose of the act, use any income or revenue of the district derived from the sale of electric power or from the sale or lease of water or the use of water for power purposes". It may readily be assumed that this amendment would permit the board to place any revenue received under the contract with the power companies in the district bond fund. When so placed they would redound to the benefit of the land owners in the district by way of a diminution of the charges for which their lands would otherwise be liable. No possible detriment could accrue to bondholders or land owners by making the amendment applicable to all outstanding bonds of the district. But this is far from saying, as apparently contended for by the petitioners, that the amendment conferred power on the board to prefer one general bond issue over another in the allocation of such power contract revenues. On the contrary the amendment merely

authorized the board to devote revenues received apart from a tax levy in diminution of such a levy.

The conclusions announced are further fortified by the fact that the legislature in 1931 (Stats. 1931, p. 777), amended section 32a of the Irrigation District Act and added new sections 32b to 32e, inclusive. By these amendments and additions the board was specifically authorized to set aside additional sources of revenue, such as those under the contract with the power company, to the payment of designated bonds of the district. This specific authorization in 1931 is legislative indication that the power did not theretofore exist, and that some change in the law was necessary in order to confer it. The change in the phraseology of the law by the amendment will be deemed as intended to make a change in the law. (*McDonald* v. *Hovey,* 110 U. S. 619, 629 [4 Sup. Ct. 142, 28 L. Ed. 269]; *Pacific G. & E. Co.* v. *Industrial Acc. Com.,* 124 Cal. App. 303 [12 Pac. (2d) 649]; *McCarthy* v. *Board of Fire Commrs.,* 37 Cal. App. 495 [174 Pac. 402]; 23 Cal. Jur., p. 778; 59 Cor. Jur., p. 896.) Furthermore, section 8 of the amending statute (Stats. 1931, p. 783), provides that said act shall not invalidate any action of the district taken before the act becomes effective. This statute was held applicable to the refunding bonds of the Nevada Irrigation District. (*Mulcahy* v. *Baldwin,* 216 Cal. 517 [15 Pac. (2d) 738].) It appeared that the proceedings in that case were initiated and carried to completion after the effective date of the act of 1931, and in pursuance of a plan agreed to after negotiations between the directors and the holders of the outstanding bonds of the district. It was there held that consent of the land owners in the district to the refunding plan and bonds to be issued was sufficiently evidenced by a favorable majority vote thereon. Other points were involved in the case but no question was properly involved in that case with reference to the rights of nonconsenting and protesting holders of prior outstanding bonds as against a preference such as was here attempted to be accorded to the holders of other and like general bonds of the district issued prior to the enactment of the 1931 statute. As to the holders of outstanding bonds it was held that they could not validly object to the issuance of refunding bonds under the par-

ticular plan later authorized by the legislature but different from the plan formerly in force for the issuance of general bonds of the district. Established principles of law would, of course, protect the holders of outstanding bonds in the enforcement of their contracts and they were not compelled to exchange their bonds for the refunding bonds, although they might be benefited by such exchange. No refunding plan, however, is involved here and the attempt to grant a preference to the holders of bonds of one general issue as against the holders of other bonds of the same general character would, if accomplished, grant a special privilege to one class of citizens not accorded to others similarly situated, in contravention of section 21 of article I of the Constitution of this state. ▆▆▆ It does not follow that the bonds of the sixth issue are void by reason of the *ultra vires* act of the district board in accepting the conditional bid. Although the purchasers of said bonds were charged with notice of the limitations of the power of the board (*McCoy* v. *Briant, supra*), the bonds, were regular in form, they were duly authorized and were negotiable, and the district is estopped from denying that they are valid charges against the district the same in all respects as other general bonds of the district. (See *Ham* v. *Grapeland Irr. Dist.*, 172 Cal. 611 [158 Pac. 207] ; 18 Cal. Jur., p. 876.) The result is that the bonds as sold and in the hands of the purchasers take their place as other general bonds of the district, to be treated as such by the district and its officers. The first question propounded by the petitioners, viz., ''Are the holders of bonds of the sixth issue exclusively entitled to the moneys so paid by the power companies under said contract?'' must be answered in the negative; and the petitioners' second question, ''Have the holders of bonds of the first five issues in any event any rights whatever in or to the moneys paid by the power companies under'' said contract? is answered in the affirmative, inasmuch as this revenue would, in substantial part, be available in discharge of the obligations on their bonds when, as here, the payments of assessments by land owners in the district are abnormally in default, and the assessments paid are insufficient to discharge such obligations. ▆▆▆ From the answer to the second question it necessarily follows that the interveners have a sufficient interest in the revenues under said

contract as general revenues of the district to entitle them to intervene.

Other points made by the parties need not be discussed, as the foregoing is deemed determinative of the proceeding.

Since there is no duty enjoined by law on the respondents to recognize the alleged preferential rights of the petitioner, the peremptory writ is denied.

Thompson, J., Curtis, J., Seawell, J., and Waste, C. J., concurred.

A rehearing was denied on May 27, 1935, and the following opinion then rendered thereon:

THE COURT.— ▇ On petition for rehearing, it is urged for the first time that a ratifying statute of 1931 (Stats. 1931, p. 376) had the effect of curing the illegal act of the board of directors of the district in recognizing and complying with the unauthorized condition attached to the bid of the purchasers of the bonds of the sixth issue. The answer of the intervener urges with much merit that it is obvious from a reading of the ratifying statute that it was the purpose of the legislature thereby to cure the irregular exercise of power and not to validate an antecedent act attempted in the total absence of power. In addition, section 2 of the act specifically provides that for the purpose of paying interest and principal on bonds of the district, the board of directors and other officers of the district shall exercise the same powers and perform the same duties with reference to the assessment, levy and collection of taxes, and with reference to the custody of funds for payment of bonded indebtedness as were provided in the respective laws authorizing the issuance of said bonds. The laws with reference to the authorization and issuance of the bonds of the sixth issue were admittedly strictly complied with. The duties of the board of directors and other officers having charge and control of the bond fund were explicitly set forth in the laws in force at the time of the issuance of said bonds. The very terms of the ratifying statute therefore excluded the curative effect contended for by the petitioner.

▇ Also, on petition for rehearing *amici curiae* on behalf of Sierra and San Francisco Power Company and Pacific

Gas and Electric Company, express apprehension lest the decision in this case lay open to challenge those portions of the contract of January 2, 1925, between said corporations and the board of directors of the district relating to the use by said corporations of the Melones Dam reservoir for the generation of electrical energy, and to the payments to the 'irrigation district for such use in accordance . with the terms of the contract. No party to this proceeding has assailed the contract in so far as it provides for such use and payment, nor even intimated that those provisions of the contract are invalid or not binding on the district. The inoperative provisions of said contract purporting to bind the district to the allocation of power revenues exclusively to a particular bond issue would appear to be readily severable from, and to have no effect upon, the other provisions of the contract with reference to the use of the reservoir by said corporations and to payment for such use. This proceeding involved the proper application of the power revenues after the same had been received by the district. The right and power of the district to receive the money under the contract are not questioned.

The petition for rehearing is denied.