[L. A. No. 1001. Department Two.—April 3, 1902.]

EDWIN BAXTER, Appellant, v. VINELAND IRRIGA-TION DISTRICT et al., Defendants. E. R. MAX-WELL and UNIVERSITY BANK OF LOS ANGELES, Interveners, Respondents.

IRRIGATION DISTRICT—CANCELLATION OF TAX SALES AND BONDS—PARTIES —INTERVENTION BY BONDHOLDERS.—In an action to cancel tax sales of plaintiff's lands by an irrigation district to pay interest on its bonds, and to annul the bonds, the bondholders, though not necessary parties, yet have such an interest as makes them proper parties and entitled to intervene, especially so where their complaint alleges that the defendants had refused to defend the action, and would not defend the same in good faith.

ID.—WAIVER OF OBJECTION TO INTERVENTION.—Where the plaintiff failed to demur to the complaint in intervention as finally amended, or to move to strike it from the files, and went to trial on his answer thereto, the plaintiff cannot object upon appeal that the interveners were not entitled to be heard.

ID.—COLLATERAL ATTACK UPON BONDS—COMPLAINT IN INTERVENTION.— The attack upon the bonds by the plaintiff in the action is strictly collateral, and is not made direct by the fact that the complaint in intervention alleges both that the interveners are *bona fide* pur-

chasers of the bonds without notice of any infirmity therein, and that the bonds were in fact legal and valid obligations of the district.

Id.—Bonds within Authority of Board—Irregularities—Protection of Bona Fide Purchasers.—Where it appears that the irrigation district was properly organized, and that the bonds were within the authority of the board, and not *ultra vires,* and the only questions raised related to alleged irregularities in the keeping of the records and in conducting the elections which authorized the issuance of the bonds, *bona fide* purchasers, without notice of such irregularities, who received bonds which were negotiable in form, and which recited a compliance with the law, are protected against any mere irregularities in the exercise of the granted power.

Id.—Avoidance of Tax Sales—Burden of Proof.—The burden of proof is upon the plaintiff in the action to prove the alleged irregularities and violations of law which vitiated the tax sales sought to be avoided and canceled; and where sufficient proof is not shown to sustain the allegations of the complaint, the action must fail.

Id.—Authority of Collector—De Facto Officer.—A collector of an irrigation district who was acting as such is a *de facto* officer, even if disqualified to become a *de jure* officer, and the failure to prove that he was duly elected is immaterial, where his right to the office was never called in question. In a proceeding to set aside tax sales by him, his acts must be regarded as the official acts of the district.

Id.—Sale Advertised for Sunday—Sale on Monday—Presumption of Postponement.—It is to be presumed that official duty was regularly performed, and that a sale advertised for Sunday, and which took place on Monday, was postponed as authorized by law.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. Waldo M. York, Judge.

The facts are stated in the opinion of the court.

Edwin Baxter, Appellant in *pro. per.*

Works & Lee, for Defendants.

Leon F. Moss, for Interveners, Respondents.

THE COURT.—The prayer of plaintiff's complaint was that the court adjudge the tax sales of defendant Vineland Irrigation District and the certificates issued thereon to be illegal, null, and void; that the bonds issued by the district, the sale of the bonds, and their use by the district be declared to be illegal and void; that the sale of plaintiff's lands and the certificates of the same issued by the district be canceled;

that the defendant the collector of the district, his deputies
and agents, be enjoined from issuing any deeds to the pur-
chaser, the said district, and that it be enjoined from receiving
any deed or evidence of title based on said sales. E. R. Max-
well and University Bank of Los Angeles filed a complaint in
intervention, alleging that they became the purchasers in good
faith of certain bonds of the district, without notice of any
irregularities in the issuance thereof, or of any infirmities
therein; that no interest had been paid thereon for more than
two and one half years, and the district was without funds to
pay said interest; that assessments had been duly levied upon
and sales duly made of plaintiff's lands in order to raise funds
for the payment of interest on said bonds; that the district
became the purchaser at the tax sales; that defendants had
failed and refused to execute a deed conveying to the district
said lands so sold, as required by law so to do, and that de-
fendants had refused to defend said action, and would not
defend the same in good faith. Interveners prayed that
plaintiff take nothing by his action; that the bonds issued
by the district be adjudged valid; that the assessments levied
upon the lands of plaintiff be declared valid, and to consti-
tute a lien upon plaintiff's lands; that the district is entitled
to a deed to said lands, and that defendants execute the same.
Defendants thereafter answered plaintiff's complaint, deny-
ing its allegations going to the legality or illegality of the
bond issues, and of the tax assessments and tax sales, but they
made no answer to the complaint in intervention, and its alle-
gations stand admitted by defendants. Plaintiff demurred to
the complaint in intervention, and also filed a motion to strike
it from the files as sham and irrelevant. The demurrer was
overruled and the motion denied, and subsequently an
amended complaint in intervention was filed, but neither the
demurrer nor the motion was renewed. Plaintiff answered
the complaint in intervention, and the cause was tried on the
verified pleadings, as shown above, defendants not appearing
at the trial. The court made specific findings, and also found
that the allegations of the complaint in intervention were
true, from which, as conclusions of law, it found that the
bonds of the district were legally issued and disposed of by
its officers, that the assessments levied upon plaintiff's land
were valid and constitute a lien thereon, and that the tax

sales were valid in all respects and the district is entitled to deeds. Judgment was accordingly entered.

Plaintiff appeals from the order denying his motion for a new trial.

1. We do not think the court can now consider the question whether the interveners are entitled to be heard. They were not necessary parties to determine whether the tax was legally levied, but they had such an interest as made them proper parties, especially so as they alleged that the defendants would not defend the action in good faith; and as plaintiff failed to demur to the complaint in intervention as finally amended and did not move to strike it from the files, but went to trial on his answer to the intervention, it is now too late to object.

2. That the interveners alleged not only that they were purchasers of bonds without notice of any infirmity in them, but that the bonds held by them were in fact legal and valid obligations of the district, did not change plaintiff's attack on them from a collateral to a direct assault. The attack on the bonds is strictly collateral, and the cause must be disposed of on that assumption.

3. The court found, on sufficient evidence, that the interveners became the owners of their bonds "without any notice whatsoever of any infirmity in said bonds, or of any irregularity or fraud connected with the issuance thereof." The district was organized in February, 1889, and on June 7, 1899, the board of directors filed their petition in the superior court of Los Angeles County, praying confirmation of all their proceedings, including the issuance and sale of bonds to the amount of $50,000, and on July 6, 1889, the court entered its decree adjudging that the district was duly and regularly organized under the provisions of the Act of March 7, 1887, (the Wright Act—Stats. 1887, p. 29,) and also approved and confirmed all proceedings of the district. No appeal was taken, and the decree became final. A portion of the bonds held by defendant bank were of this first series or issue. On October 6, 1891, the board passed a resolution reciting that "whereas the construction fund is exhausted, and the Vineland Irrigation District has not completed its system of irrigation works, and has estimated and determined that twelve thousand dollars additional bonds will be necessary to com-

plete said works, therefore resolved . . . that said board do hereby call an election . . . to vote upon issuing twelve thousand dollars additional bonds to complete said district works." The board canvassed the returns of the election, which showed all the votes cast to be in the affirmative, and they declared the election carried for the bonds unanimously.

These bonds were issued in the same form as the first series, and came into the hands of one Roberts, who received them at par, in exchange for certain water rights and other property sold by him to the district, and he subsequently sold part of them to defendant bank and part to defendant Maxwell. In form the bonds of both issues were "promises to pay to the bearer," and each bond recited that "this bond is one of a series of bonds, amounting in the aggregate to fifty thousand dollars (the second series reading $12,000), caused to be issued by the board of directors of said Vineland Irrigation District, and pursuant to a vote of the electors of said district at an election held [stating time]. . . . Said bonds are issued by authority of, pursuant to, and after a full compliance with all the requirements of the act of the legislature [giving title of the act of March 7, 1887]. . . . All the said bonds and the interest thereon are to be paid by revenue derived from an annual tax upon the real property of the district, which tax is, and the said bonds are, by said act of the legislature, made a lien upon all said real property." The bonds are signed by the corporation and by its president and secretary, and the corporate seal is affixed. Section 15 of the Wright Act prescribes the terms of the bonds, and expressly provides that they "shall be negotiable in form, signed by the president and secretary, and the seal of the board of directors shall be affixed thereto"; also, that the bonds shall express on their face that they were issued by authority of the act; that the question of issuing bonds shall be submitted to an election, and if carried shall be by the board so declared and entered of record; the entire matter of holding elections and issuing bonds and managing the business of the district is placed in the hands of the directors. Plaintiff concedes that the district was duly organized, and that the directors had the power to issue the bonds in question upon compliance with the provisions of the act, but he contends that there can be no innocent

*bona fide* holder of these bonds without notice of irregularities in their issue; that they have not the character of negotiable instruments; that if illegal when issued, or made so by their issue, the lands of the district cannot be bound by them in any hands. The objections to the proceedings relate to alleged irregularities in keeping the records, in conducting the elections, in failing to advertise the bonds for sale, and like matters. It was held in *Meyer* v. *Brown*, 65 Cal. 583, that the power of a municipality to issue bonds being conceded, no question of irregularity, or even fraud, on the part of its agents could be considered where the bonds are in the hands of *bona fide* purchasers or holders for value without notice of the alleged irregularities. In *Pompton* v. *Cooper Union*, 101 U. S. 196, cited in *Meyer* v. *Brown*, it was said: "This court has uniformly held, when the question was presented, that where a corporation has lawful power to issue such securities, and does so, the *bona fide* holder has a right to presume the power was properly exercised, and is not bound to look beyond the question of its existence. Where the bonds on their face recite the circumstances which bring them within the power, the corporation is estopped to deny the truth of such recital."

The various propositions relating to the subject which have been passed upon by the courts will be found in Daniel on Negotiable Instruments (vol. 2, sec. 1537). See, also, for a more recent collection of the cases and established principles, Hainer on Modern Municipal Securities (sec. 397 et seq.) We think the interveners had a right to presume that the bonds purchased by them were legally issued as valid obligations of the defendant district. As to the bonds not held by interveners, there is no evidence that any of them remain unsold in the control of the corporation; on the contrary, plaintiff states in his complaint that all have been sold and disposed of, but it does not appear by whom they are now held. Manifestly, in this action, the present holders of the bonds being unknown and not parties before the court, no decree could be entered declaring such bonds to be illegal and void. The case might be different if the bonds were still unissued or were shown to be in the hands of persons charged with notice of their illegality, as was the case in *Hughson* v. *Crane*, 115 Cal. 404, relied on by appellant.

4. Notwithstanding what has been said, plaintiff has a right to show that the assessment was illegally made; while his property may be taxed for a legal object, the levy must be in accordance with law, or he may have relief against its enforcement. The burden was on plaintiff to prove the irregularities or violations of the statute which are claimed to have invalidated the assessments and sales. We think appellant has failed to successfully bear the burden he took upon himself. He alleges in his complaint that assessments of taxes for irrigation purposes have been levied on all the lands of the district each year since and including 1889, the levy also being for the payment of interest on the bonds of the district, and it appears that interveners received their interest, and presumably other bondholders also, until some time in 1894. Plaintiff alleges that taxes were levied for the payment of interest on the bonds for the years 1894, 1895, and 1896, and each year the taxes became delinquent and his lands were sold by the district for non-payment, and the district became the purchaser, and he alleges that certificates of sale were issued by the collectors, who made such sales, and delivered them to the purchasers. He alleges, however, that the taxes levied for the purposes named and for other purposes set forth in the complaint were illegally levied, and this allegation he was called upon to prove, after having shown that a levy had been made. Four minute-books were introduced and identified as records of the district, also the assessment-books and a warrant-book and sales-book. Apparently the four minute-books do not embrace the entire period from 1889 to 1898 inclusive, but witness Benton, who was secretary and deputy collector in 1896 to 1898, testified: "The advertisements were burned when the post-office burned; all the other records and papers were burned except these books," referring to the books introduced. It does not appear what papers and books were lost by this fire, and no attempt was made to show what they were. This witness testified that he could not remember what the papers burned contained,—"the records burned were loose papers—not books." The assessment-book and sales-book introduced covered the period 1893–1898. Benton testified that the minutes would or should show the record of assessments made by the board for each year and what was done in the matter of levying taxes and assessments and

making sales, but this was not shown in the assessment- and sales-books. The assessments of plaintiff's lands for 1894, 1895, 1896, and also the sales-book showing sales of his lands, were introduced and the deputy county recorder produced from the county records certificates of sales of plaintiff's lands corresponding with the sales as shown by the sales-book. Relating to the alleged illegal assessments, plaintiff was a witness in his own behalf. His testimony consists of a running commentary on the minutes and records as to what he finds and what he fails to find, but the minutes and records of which he speaks are not in the record. The court had the documents before it, and, for aught we can know, they disputed the statements of the witness or failed to bear out his commentaries on them. So far as plaintiff's lands are concerned (no other portion of the record appearing), there was an assessment for the three years, and also a copy of the register of sales for delinquent taxes for those years, showing the numbers of the certificates of sale, description of plaintiff's land, date of sales, name of purchaser, and amount paid, from which it appears that the district was the purchaser. Plaintiff, as witness, stated that the only evidence he could find that the record introduced is an assessment-book is from an indorsement on the back of the book, but that there is no name of any officer attached to the book or the assessments, although it is admitted that the name appeared on the printed statements. It is claimed that this is no record. But it came from the custody of the officers, and was sufficiently identified as the official record. The witness (plaintiff) introduced a copy of a printed notice and delinquent list of all delinquent property including his own for the year 1895, issued by George H. Bonebrake, collector of the district, which fixed the date of sale for February 22, 1896, at the hour of 10 o'clock A. M., the sale to be at a place named, "for and on account of such delinquent assessments thereon as are shown upon the books of assessment in my office, and that I will continue such sales from day to day (Sundays and legal holidays excepted) according to adjournments, and between the hours of 10 A. M. and 3 P. M. of each day of sale at the same place," etc. It was shown that Bonebrake was not a resident of the district, but resided in Los Angeles; the office, however, and place of business of the district was within the district boundaries. The points

made on this assessment are,—1. That the sale was illegal, because noticed to take place on a legal holiday; and 2. That Bonebrake was disqualified to act. February 22, 1896, occurred on Saturday, and the sale was on Monday, the 24th. Bonebrake was the collector of the district, and so signs himself. There is no evidence that he was not duly elected. The objection is, that he resided in Los Angeles. His right to the office was never brought in question, and he was the *de facto* officer, even if disqualified to become a *de jure* officer. In this proceeding we must regard his acts as the official acts of the district.

The Wright Act (sec. 26) provides: "On the day fixed for the sale, or on some subsequent day to which he may have postponed it, . . . the collector . . . must commence the sale of the property advertised. . . . He may postpone the day of commencing the sales, or the sale, from day to day, but the sale must be completed within three weeks from the first day fixed." Whether a sale could be set for and made on a legal holiday has not been decided in this state, so far as we have discovered. The codes provide: "Whenever any act of a secular nature other than a work of necessity or mercy is appointed by law or contract to be performed upon a particular day, which falls upon a holiday, such act may be performed upon the next business day with the same effect as if it had been performed upon the day appointed." (Pol. Code, sec. 13; Civ. Code, sec. 11; Code Civ. Proc., sec. 13.) The law had not appointed a particular day for the sale in question, and whether a day which the law authorizes to be fixed upon a particular day may be said to be a day appointed by law is at least doubtful. It is not necessary to decide the question. It is to be presumed that official duty was duly performed, and that the officer kept within the statute, and that he postponed the sale to the day, Monday, the 24th, which the law allowed him to do. We find no statute prohibiting such a sale on a holiday, and we find no statute prohibiting the postponement of a sale noticed on a holiday. If the sale could not be made on a holiday, by reason of the code provision, then it could be made on the next business day where, as in the case of this notice, the hour was fixed for both the day named and any day to which the sale might be adjourned. We con-

clude that the sale was not void for the reasons urged by appellant.

The minute-book No. 4 showed a resolution passed to call a special election for February 19, 1894, "on the question of raising a special tax of four thousand dollars for the purpose of cementing the open ditch." Another entry shows that there was a canvass of the returns of the election on March 5, 1894, and it was recorded that the vote was unanimous in favor of that issue. The witness (plaintiff) testified that he could find no record of any notice of election on the books or of any canvass of any election held on February 19th. The resolution shows that the returns were canvassed and the result recorded. It does not appear that no notice of the election was given; it only appears that witness could find no record of it. Plaintiff made no attempt to prove by any of the officers what did or did not in fact take place during all these years, although several of the officers were witnesses at the trial. The record as made up is a jumble of fragmentary excerpts from the minute-books and other records, brought together on the theory, apparently, that it was incumbent on defendants to supply missing links in the chain of evidence. But plaintiff did not make any such showing as would shift the burden of proof which was on him. He could have shown from the witnesses, if it were the fact, that the proceedings that are alleged to be wanting were never taken. Instead of this he showed enough of the proceedings and of such character as to raise the presumption that the other necessary steps were taken, but he went no farther.

It must be admitted that if this were an action by the district in which it was called upon to show compliance with the statute in carrying on the business of the district, no court could find sufficient in this record to validate their proceedings. As the matter stands, however, it presents a case of failure of proof to sustain the allegations of the complaint.

The order is affirmed.

McFARLAND, J., concurring.—I concur in the judgment. I also concur in the foregoing opinion, unless paragraph 3 thereof can be construed as meaning that bonds of an irrigation district must always be held to be valid beyond question in the hands of a *bona fide* holder, if they are regular on their face and contain certain recitals. Such district has only the

powers which are given it by statute; and if, in its name, bonds are issued which are beyond its power to issue,—*ultra vires,*—they are of no more value than is a paper purporting on its face to be a negotiable promissory note of a maker who never signed it, nor authorized any one to sign it for him. (See *Stimson* v. *Alessandro Irr. Dist.,* 135 Cal. 389.)   In the case at bar, however, only the regularity of the exercise by the trustees of a granted corporate power is involved.

Temple, J., concurred.