[L. A. No. 8223. In Bank.—March 15, 1926.]

WINIFRED F. MARR, Appellant, v. SOUTHERN CALI-
FORNIA GAS COMPANY (a Corporation) et al.,
Respondents, FARMERS & MERCHANTS BANK, a
Corporation, et al., Interveners and Respondents.

[1] APPEAL—JUDGMENT-ROLL—ERRORS CONSIDERED.—Where an appeal
from a judgment is prosecuted on the judgment-roll alone, the
appellate court is confined to a consideration of alleged errors
appearing on the face of said judgment-roll.

[2] MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICT—DESCRIPTION
—FINDINGS—EVIDENCE—APPEAL.—In an action by a resident
and taxpayer to have declared invalid certain proceedings for
the formation of a municipal improvement district in a given
municipality and for the issuance of bonds of the district to
acquire or construct works for supplying the people with gas,
where the district embraces several square miles of territory
and the description contained in the ordinance of intention to
form the district is a technical one covering several printed
pages, and the trial court finds that such ordinance contains a
correct description of the exterior boundaries of the proposed
district and refers to a map on file in the office of the city clerk
for all details as to the extent of the district, and that the ex-
terior boundaries of said district are entirely within the exterior
boundary of said municipality, and it is impossible to tell from
a reading of the ordinance of intention whether or not such
latter finding is correct, and the appeal is on the judgment-roll
alone, the finding of the trial court in that regard must be pre-
sumed to speak the truth and be supported by the evidence.

[3] ID.—VARIANCE BETWEEN MAP AND ORDINANCE—FINDINGS—CON-
TROLLING DESCRIPTION.—In such action, a statement by the trial
court in its conclusions of law to the effect that the description
of the boundaries of the district as shown on the map on file
with the city clerk controls over any description of said boundaries
as set forth in the ordinance of intention to form the district
or in the ordinance calling the election "in so far as there may
be any variance between the descriptions on the map and in said
ordinances" cannot be taken as a finding or a conclusion that
such variance actually exists, but only that if such variance does
exist the map should control; and such statement is but a dec-
laration of the law as contained in the amendment of subdivision

1.   See 2 *Cal. Jur.* 690.
2.   See 2 *Cal. Jur.* 525.

4 of section 2 of the act (Stats. 1919, p. 670), that "said map shall govern for all details as to the extent of said district."

[4] ID.—LEVY UPON PROPERTY OUTSIDE DISTRICT—REFUND OF TAX.—In such action, where the trial court finds from the evidence that the tax on certain property resulting from the levy of a given year was refunded to the owner of the property for the reason that the property was not within the boundaries of the improvement district, such finding constitutes a conclusive answer to the contention of plaintiff, based upon the making of such refund, that it was intended by the city council to tax only a portion of the territory within the district for the payment of the bonds.

[5] ID.—OMISSION OF PROPERTY—ISSUES—FINDINGS.—In such action, where the allegation of plaintiff's second supplemental complaint to the effect that the city council threatened to levy a tax and thereafter to continue to levy taxes within the district to satisfy the bonds, but threatens to omit from said levy three parcels of land within the district, is denied by one of the defendants, this is sufficient to present the issue; and the finding of the trial court that the levy of a designated year was made upon all the property within the district, and that the council would in the future, unless restrained by the court, levy taxes upon all the taxable property within the district to pay the principal and interest on said bonds, is a sufficient finding upon such issue.

[6] ID.—OMISSION OF REFERENCE TO STATUTE, "AS AMENDED."—Municipal improvement bonds are not rendered invalid by reason of the fact that neither the ordinance authorizing the issuance of such bonds nor the bonds themselves, in referring to the act under which the proceedings were taken, refer to the act "as amended."

[7] ID.—EMPLOYMENT OF SPECIAL ATTORNEY—REGULARITY OF PROCEEDINGS—PRESUMPTION.—Under its charter (Stats. 1921, p. 2218), the city council of the city of Glendale had the power to engage an attorney to assist the city attorney in connection with proceedings in which the city was interested; and in the absence of a showing to the contrary, it will be assumed that the council regularly pursued its authority.

[8] ID.—VALIDITY OF ATTORNEY'S FEE PAID—ABSENCE OF NECESSARY PARTY.—The payment of the fee to the attorney employed to assist the city attorney in connection with proceedings for the formation of a municipal improvement district having been paid prior to the commencement of the action by a taxpayer to test the validity of such proceedings, and said attorney not having been made a party to said action, the right of said attorney to the money received could not be adjudicated in said action.

[9] ID.—PLACING OF BOND MONEY ON DEPOSIT AT INTEREST—PAYMENT OF INTEREST INTO GENERAL FUNDS.—Where, pending the

final determination of an action to test the validity of the pro-
ceedings for the formation of a municipal improvement district
in the city of Glendale and of the bonds issued in connection
therewith, said city places the money received from the sale of
said bonds on deposit at interest in certain banks, it is author-
ized, under section 14 of article XI of its charter, to pay the
interest received from these deposits into the general funds of
the city.

[10] Id.—Removal of Property from District—Findings—Defeat
of Levies to Pay Bonds.—In such action, where the complaint
alleges that since the levy of the year in which the municipal
improvement district proceedings were instituted much property
of the district has been sold and other taxable property been
removed from the district, but this allegation is denied, and the
trial court finds that the allegation is not true, and the appeal
is on the judgment-roll alone, such finding is not subject to at-
tack; but even if plaintiff's allegation were true, such change in
the status of the property in the district would not defeat the
levies necessary to provide for the interest and principal of the
bonds.

[11] Id.—Date of Formation of District—Prior Tax Levy.—The
city of Glendale, having been in existence on the first Monday in
March, 1922, had the power to levy a tax for that year upon
the property within a municipal improvement district formed for
the purpose of acquiring works for supplying the people of said
district with gas, notwithstanding the proceedings for the forma-
tion of said district were not taken until after the first Monday
in March of that year.

[12] Id. — Bonds as Negotiable Instruments — Bona Fide Pur-
chasers—Estoppel—Evidence—Findings—Conclusions.—In this
action to test the validity of the proceedings for the formation of
a municipal improvement district in the city of Glendale and for
the issuance of bonds to acquire works for supplying the people of
the district with gas, the findings and conclusions of the trial
court that the bonds were negotiable instruments and that all the
purchasers thereof were *bona fide* purchasers for value before
maturity and without notice of any defects, and that by reason of
the recitals and the promise of the city contained in said bonds
the district and any taxpayer in the district were estopped to set
up any alleged defects or irregularities against the bondholders,
were supported by the record and were legally sound.

[13] Id.—Gas-works Bonds—Irregularities—Validating Act.—The
bonds of the municipal improvement district organized in the city
of Glendale in 1922 to acquire works for supplying the people of
the district with gas having received a favorable vote of more
than two-thirds of the qualified electors voting at the election at

which such bonds were authorized, and such bonds having sold at par and at a premium, such bond issue came within the conditions of the validating act of 1923 (Stats. 1923, p. 272), and under said act any irregularities subsequent to the formation of the district, and which were not jurisdictional, were wiped out.

[14] ID.—VALIDATING ACT—PLEADING—EVIDENCE—JUDICIAL NOTICE.— In an action by a resident and taxpayer in said district to test the validity of said proceedings and of said bonds, the defendants could rely upon such validating act, although it was not pleaded and proved by them, as the court takes judicial notice of the passage of that statute.

---

(1) 4 C. J., p. 554, n. 36.   (2) 4 C. J., p. 735, n. 25.   (3) 28 Cyc., p. 1122, n. 61.   (4) 28 Cyc., p. 1128, n. 81.   (5) 28 Cyc., p. 1190, n. 70 New.   (6) 28 Cyc., p. 1585, n. 28.   (7) 28 Cyc., p. 590, n. 49.   (8) 28 Cyc., p. 1188, n. 47 New.   (9) 28 Cyc., p. 1563, n. 2.   (10) 4 C. J., p. 535, n. 8.   (11) 12 C. J., p. 1264, n. 46.   (12) 28 Cyc., p. 1615, n. 40.   (13) 28 Cyc., p. 1606, n. 54.   (14) 23 C. J., p. 129, n. 96.

APPEAL from a judgment of the Superior Court of Los Angeles County. Walton J. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

Winifred F. Marr, *in pro. per.,* for Appellant.

Thos. J. Reynolds, Musick, Burr & Pinney, O'Melveny, Millikin, Tuller & Macneil, Paul E. Schwab, Edward T. Bishop, County Counsel, J. H. O'Connor, Assistant County Counsel, and Ray L. Morrow for Respondents.

SHENK, J.—Commencing May 10, 1922, proceedings were taken under the statute (Stats. 1915, p. 99, as amended Stats. 1919, p. 670) for the formation of Municipal Improvement District No. 6 in the city of Glendale and for the issuance of $50,000 in bonds of the district to acquire or construct works for supplying the people of the district with gas. The proceedings were completed and the bonds were authorized, issued and sold to the respondent William R. Staats Company and were by them resold to the interveners prior to the commencement of this action. The appellant, a resident and taxpayer within the district, brought

---

14.  See 23 Cal. Jur. 664; 25 R. C. L. 946.

this action for the purpose of having it judicially declared that the proceedings for the formation of the district and for the issuance and sale of said bonds were null and void and to enjoin the city authorities from levying and collecting taxes on the property within the district to discharge the obligation represented by said bonds. In her amended complaint as amended and in her supplemental, second supplemental and third supplemental complaints the appellant alleged numerous grounds of irregularity and illegality in said proceedings. All of the material allegations contained in these pleadings were put in issue by the answers of the defendants named therein or by some one of them. A complaint in intervention was filed on behalf of the holders of said bonds wherein it was sought to have the proceedings declared valid and to have the city authorities compelled to levy a tax to pay the principal and interest of said bonds accrued and to become due.

After trial on the merits the court found and concluded that the proceedings were regular and valid in all respects, and that the said bonds were binding obligations on the property of said district and rendered judgment accordingly. It also rendered judgment in favor of the respondent interveners directing the council of said city to levy and collect a tax each year upon the taxable property of said district sufficient to pay the principal of and interest on said bonds as the same should become due and to levy and collect an additional sum to make up a deficiency in the levies of 1922 and 1923 on account of said bonds. [1] This appeal from the judgment is prosecuted on the judgment-roll alone. We are therefore confined to a consideration of alleged errors appearing on the face of said judgment-roll (*Neale* v. *Morrow*, 174 Cal. 49 [161 Pac. 1165]; 2 Cal. Jur. 525). The record is certified by the clerk and contains some 550 printed pages. The contentions of the appellant on that record will first be considered and as far as may be in the order of their presentation.

[2] 1. It is contended that a portion of the district is outside of the boundaries of the city of Glendale and that the proceedings for the formation of the district are therefore void on the authority of *Mulville* v. *City of San Diego*, 183 Cal. 734 [192 Pac. 702]. The appellant's pleadings alleged that a portion of the district was outside of the city

and the answer of at least one of the respondents denied that allegation. The court found that Ordinance No. 578, being the ordinance of intention to form the district, contained a correct description of the exterior boundaries of the proposed district and, referred to a map on file in the office of the city clerk for all details' as to the extent of the district and that the exterior boundaries of said district were entirely within the exterior boundaries of the city of Glendale. The district embraces several square miles of territory and the description contained in the ordinance of intention is a technical one covering about five printed pages. From a reading of this description it is impossible to determine whether or not said territory is or is not entirely within the limits of said city and as the evidence is not before us the finding of the trial court will be presumed to speak the truth and be supported by the evidence (*Estate of Shirey*, 167 Cal. 193 [138 Pac. 994] ; 2 Cal. Jur. 525, and cases cited).

[3] 2. Ordinance No. 590, being the ordinance calling the election at which the bonds were authorized, also contained a detailed description of the boundaries of the district. It is claimed by the appellant that this description particularly shows that a portion of the district is outside the city. There is nothing in this description, however, from which it is possible, without the aid of evidence, to determine that such is the case. For like reasons it must also be concluded that there is nothing in that ordinance which would render the findings unsupported. It is not contended that the map on file in the office of the city clerk did not properly delineate the boundaries of the district as entirely within the city limits, but it is insisted that the statement of the trial court found in the conclusions of law to the effect that the description of the boundaries of the district as shown on said map controls over any description of said boundaries as set forth in said Ordinances Nos. 578 and 590 "in so far as there may be any variance between the descriptions on said map and in said ordinances" is in effect a finding that there was such variance and that therefore the council had no jurisdiction over the district with boundaries at variance with the description set forth on said map. The statement of the court cannot be taken either as a finding or a conclusion that such variance actually existed but only that if such variance did exist the map should

control. Said statement is but a declaration of the law as contained in the amendment of subdivision 4 of section 2 of the act that "said map shall govern for all details as to the extent of the said district" (Stats. 1919, p. 671).

[4] 3. It is contended that the record shows that it was intended by the city council to tax only a portion of the territory within the district for the payment of said bonds. In this connection it was alleged in the supplemental complaint that the lands of G. B. Woodberry were within the district and that the council had refunded to him the tax on his land resulting from the levy of 1923. The refund was admitted by the city but it was denied that said land was within said district. The court found that said tax was refunded for the reason that the land of Woodberry was not within the boundaries of said district. It is not pointed out how this refund could affect the proceedings for the organization of the district or for the issuance of said bonds and it may not be said that such refund affords any ground for the conclusion that the tax levy on the lands within the district was invalid. The finding of the court on the issue squarely raised as to the location of said land is a conclusive answer to the contention.

[5] 4. In her second supplemental complaint the appellant alleged in effect that the city council threatened to levy a tax and thereafter to continue to levy taxes within said district to satisfy said bonded indebtedness but threatens to omit from said levy three parcels of land within the district. The claim is made that the allegation was not sufficiently denied. It was, however, denied by at least one of the respondents and this denial was sufficient to present the issue. It is also asserted that the court failed to find upon the issues presented. The court did find that the levy of 1922 was made upon all the property within the district and that the council would in the future, unless restrained by the court, levy taxes upon all the taxable property within the district to pay the principal and interest on said bonds. This finding was unquestionably sufficient.

[6] 5. The ordinance authorizing the issuance of said bonds recited that the proceedings for such authorization were in pursuance of the act approved April 20, 1915, and the bonds as issued and sold contained the provision that "under and by virtue of an act of the Legislature of the

State of California, entitled [quoting title] approved April 20, 1915, Municipal Improvement District No. 6, of the City of Glendale, State of California, by its governing body, the Mayor and City Council, promises out of the fund hereinafter described, to pay to the bearer," etc. The title of the act was amended in 1919 by striking out the word "therein" (Stats. 1919, p. 670). Neither the ordinance nor the bonds, in referring to the act under which the proceedings were taken, referred to the act "as amended" and it is claimed that for that reason the said bonds are a nullity. There is no merit in the contention. Reference to the act was merely for the purpose of identifying the proceedings as taken under a particular enabling act and was but a declaration that the proceedings were had and the bonds issued under said act as it existed when the proceedings were taken and the bonds were issued (*Steele* v. *Village of River Forrest,* 141 Ill. 302 [30 N. E. 1034]).

6. The court found that at the time of the trial there was in the treasury of the city of Glendale to the credit of Municipal Improvement District No. 6 Bond Fund the sum of $49,081.57. The difference between that sum and the entire proceeds from the sale of said bonds the appellant alleged was illegally expended by the city. [7] One item consisted of the payment of $750 to an attorney for legal services rendered in connection with said proceedings, including those for the issuance of said bonds. The court found that this attorney was neither an officer nor an employee of the city and that the expenditure had been made on the 14th of September, 1922. No specific finding is made with reference to the alleged illegality of said expenditure, but it is found and concluded generally that the challenged acts and proceedings of the city were regular and valid. The city council had the power to engage an attorney to assist the city attorney in connection with proceedings in which the city was interested (Charter, Stats. 1921, p. 2218). In the absence of a showing to the contrary, and none is shown, it will be assumed that the council regularly pursued its authority. [8] Furthermore, the said attorney was not made a party to this action and the expenditure was made prior to the commencement of this action. Under such circumstances the rights of said attorney to the money received could not be adjudicated in said action nor could an in-

junction be issued to restrain the expenditure of money already paid out. There was also transferred from said bond fund, on warrants duly issued, the sum of $171.38 to the credit of funds of other city departments as payment on account of expenses of the city generally, presumably for engineering work, drafting, etc. Objection is made to this expenditure from the bond fund but appellant has advanced no reason, and we have discovered none, why the said expenditures should not rightly be made as "incidental expenses in connection" with the improvement district proceedings as mentioned in subdivision 3 of section 2 of the act (Stats. 1915, p. 100).

[9] 7. Pending the final determination of this controversy the city placed the moneys in said bond fund on deposit at interest in certain banks. The interest received from these deposits was paid into the general funds of the city. The appellant insists that the said interest should accrue to the bond fund and that the city should be enjoined from paying said interest into its general fund. Section 14 of article XI of the city charter (Stats. 1921, p. 2224) would seem to be full authority for the course followed by the city. That section of the charter creates the "General Budget Fund" and provides that revenues from various enumerated sources *including interest on bank deposits* shall be credited to said fund. There appears to be no reason why the charter may not properly so provide.

8. Appellant contends that the findings do not support that portion of the judgment which directed a deficiency tax levy of $8,960. According to the ordinance authorizing the issuance of the bonds and the provisions of the bonds themselves as sold and delivered $9,000 principal and $3,000 interest were to become due on August 1, 1923, also $2,000 principal and $2,460 interest were to become due August 1, 1924. The tax levies of 1922 and 1923 provided for an aggregate of only $7,500. Mathematical computation discloses that the amount of the deficiency was correctly figured and provided for in the judgment.

[10] 9. It is further contended that the deficiency levies for 1922 and 1923 constitute the taking of appellant's property without due process of law. She predicates her contention on the assumption that since the levy of 1922 much property of the district has been sold and other taxable

property been removed from the district. This allegation was denied and the court found that the allegation was not true. Whatever may be the fact as disclosed by the evidence, the finding, in the absence of evidence, is not subject to attack. It may also be said that even if the allegation be true no reason appears why the change in the status of the taxable property in the district could defeat the levies necessary to provide for the interest and principal of said bonds (see *Berkey* v. *Board of Commrs., etc.,* 48 Colo. 104 [20 Ann. Cas. 1109, 110 Pac. 197]).

[11] 10. Appellant next contends that the levy of 1922 was further in violation of the constitutional guarantee that property shall not be taken without due process of law because the district was formed after the first Monday in March, 1922. She cites and relies on the case of *East Bay Municipal Utility Dist.* v. *Garrison,* 191 Cal. 680 [218 Pac. 43]. In that case the act under which the petitioning district elected to avail itself of the assessments made by the county assessors as a basis for the district taxation provided that the board of directors of the district ''shall declare its said election by ordinance and file a certified copy of the same with the auditor or auditors of the county or counties in which the district is situated, on or before the first Monday in February of each year.'' The petitioning district was not organized until May 22, 1923, and on the thirty-first day of the same month the board of directors adopted an ordinance electing to avail itself of the assessments made by the assessors of the counties of Alameda and Contra Costa for the purpose of district taxation to be assessed, levied and collected for the year 1923, and filed a certified copy of said ordinance with the auditor of each of said counties and demanded that the proper officers of said counties compute and enter in the assessment-books the assessments for the sums to be paid as a district tax upon the property within the East Bay Municipal Utility District. Upon their refusal the proceeding was commenced to compel them to do so. It was therein properly held that the time provision of the statute was mandatory and that since the required ordinance had not been adopted prior to the first Monday of February of that year, no duty devolved upon the respondent county officers to levy and collect the district tax as demanded by the petitioner. As an additional rea-

son why the writ should be denied in that case it was stated in effect that inasmuch as the East Bay Municipal Utility District was not in existence on the first Monday in March, 1923, the property in said district was not subject to the lien of the tax as of that date for the support and maintenance of the district for that year. In other words, the governmental body under whose authority the tax was to be levied and the governmental entity for whose support and maintenance the funds were required were not in existence on the first Monday in March, 1923, consequently there was no legal obligation on the part of the taxpayers in the district and no legal purposes of the district for which a lien for any tax could attach on the first Monday in March, 1923. That case, when examined in the light of the facts there presented, is not authority for plaintiff's position. When the property is in existence and is subject to the lien of the tax as of the first Monday in March and there is also on that date in existence a political subdivision or other governmental entity of the state vested with power to impose the tax, it is obvious that, when not prohibited by statute or otherwise by law, a tax may be levied to discharge financial obligations incurred after the first Monday in March and before the tax levy is fixed. In the present case there was in existence on the first Monday in March, 1922, the city of Glendale, a municipal corporation, vested with power to tax the property within Municipal Improvement District No. 6 and to enforce the lien as of that date. There was also in existence at that time the property within the district which was subject to taxation and there was also in effect the act of 1915 through the medium of which the obligation of said bonds could be incurred and the payment thereof provided for. No statute or decision has been referred to which would indicate that the tax under such circumstances could not be levied.

[12] 11. The court found and concluded that the said bonds were negotiable instruments and that all of the purchasers thereof, interveners and respondents herein, were *bona fide* purchasers for value before maturity and without notice of any defects. It also found and concluded that by reason of the recitals and the promise of the city contained in said bonds the district and any taxpayer in the district were estopped to set up any alleged defects or irregularities

against the bondholders. These findings are supported by the record and the conclusions are legally sound. (*Baxter v. Vineland Irr. Dist.,* 136 Cal. 185 [68 Pac. 601]; *Miller v. Perris Irr. Dist.,* 99 Fed. 143; *Tulare Irr. Dist.* v. *Shepard,* 185 U. S. 1 [46 L. Ed. 773, 22 Sup. Ct. Rep. 531, see, also, Rose's U. S. Notes].)

[13] The legislature of 1923 adopted a validating act wherein it was provided that in all cases where the legislative branch of any municipality had called an election under the act approved April 20, 1915, or under said act as amended, for the purpose of forming a municipal improvement district thereunder and the incurring of an indebtedness by the issuance of bonds of the district and where at such election two-thirds of the electors voting thereat should vote in favor of incurring such indebtedness "the power to issue such bonds and all the acts and proceedings of said municipality leading up to and including the issuance and sale or the proposed issuance and sale of such bonds are hereby legalized, ratified, confirmed and declared valid to all intents and purposes" (Stats. 1923, pp. 272, 273). That act contains a proviso to the effect that the said act shall not operate to legalize any bonds of any municipal improvement district of a municipality that have not at the time of the passage of the act been authorized by a vote of not less than two-thirds of the qualified electors in such improvement district voting at any such election or any bonds that have been sold for less than their par value. It was alleged and found herein and is not disputed that the said bonds received a favorable vote of more than two-thirds of the qualified electors voting at the election at which the bonds were authorized and that the said bonds were sold at par and a premium. It therefore appears that the bond issue here in question was properly included within the conditions of said ratifying act. Assuming that irregularities alleged by the appellant subsequent to the formation of the district had been proved they were not jurisdictional and the curative act would have wiped them out. (*Los Angeles County Flood Control Dist.* v. *Hamilton,* 177 Cal. 119 [169 Pac. 1028]; 23 Cal. Jur. 611, and cases cited.). [14] There is no merit in the contention of the appellant that the said ratifying act may not be considered because it was not pleaded and proved by the respondents. The court takes

198 Cal.—19

judicial notice of the passage of that statute (23 Cal. Jur. 664, 665).

Other points made by the appellant do not require discussion and in view of the foregoing determinations it is unnecessary to pass upon other contentions made by the respondents.

The judgment is affirmed.

Richards, J., Seawell, J., Waste, C. J., Lennon, J., Curtis, J., and Lawlor, J., concurred.